**In re Dale Harley ILER, Debtor.**

**Bankruptcy No. 3–80–00239.**

United States Bankruptcy Court,
D. Tennessee.

March 17, 1982.

James A. McIntosh, Knoxville, Tenn., for Dale Harley Iler.

Leon Steinberg, Knoxville, Tenn., trustee.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

This case presents the question of whether funds held by the debtor's former employer pursuant to a deferred compensation plan constitute property of the estate within the meaning of 11 U.S.C. § 541.

### I

In 1966 Dale Harley Iler became an insurance agent for Mutual of Omaha Insurance Company. A "Career Salesman's Contract" was executed. This contract fixed the

amount of commission that Iler would receive on policies sold, computed on the basis of the agent's level of sales. In addition, the contract provided for a system of "deferred compensation," based on the agent's level of sales and renewals, payable to the agent or the agent's designated beneficiary upon the agent's death, disability, or termination of the contract.

On March 4, 1980, Iler filed a petition in bankruptcy. At that time he was still employed as an agent for Mutual of Omaha. However, a short time thereafter he retired from Mutual of Omaha but subsequently returned to work with the company where he remained until stricken with a serious illness.

In his bankruptcy petition, as amended, Iler claimed as exempt under 11 U.S.C. § 522(d)(10)(E) the value of the benefits under the lifetime career contract, approximately $17,000.[1]

Iler insists that, since the funds in the deferred compensation plan are paid to the agent (Iler) only on death, disability or retirement, and none of these conditions had been met at the time of the filing of the bankruptcy petition, the funds cannot be considered property of the estate for the purpose of § 541. The trustee disagrees.

The deferred compensation provisions of the Contract, Paragraph II, D, provide:

1. Agent may receive certain additional compensation, Para. D.

2. Amount to be computed by applying a percentage to the renewal premiums received by the company, Para. D1(a).

3. If agent dies while contract is in force, the company will pay to the agent's designated beneficiary or to the agent's estate, equal monthly payments for a period of ten years. Para. D2.

4. If agent becomes totally disabled, at the end of the first year of such total disability company will pay to agent in equal monthly payments over a period of ten years. Para. D3.

5. Upon termination of the contract otherwise than by death, the company will pay to the agent equal monthly payments for a period of ten years. Para. D4.

6. No rights of the agent, or any beneficiary designated by him, shall be transferable, assignable or subject to anticipation. Para. D7.

## II

The filing of a bankruptcy petition creates an estate which consists of "all legal or equitable interests of the debtor in property...." 11 U.S.C. § 541. Sec. 70 of the former Bankruptcy Act was more restrictive, specifically, § 70(a)(5) provided that the trustee was vested by operation of law with the title of the bankrupt in

"property ... which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered...." 11 U.S.C. § 110(a)(5) (repealed 1978).

In the present controversy the debtor maintains that his interest in the deferred compensation funds does not constitute property of the estate even under the broad language of § 541, since at the time of the filing of the petition the funds were beyond his control. "Control," however, is not the determinative factor.

1. "(d) The following property may be exempted under subsection (b)(1) of this section:

(10) The debtor's right to receive—

. . . . .

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409)." 11 U.S.C. § 522(d)(10)(E).

In *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the bankrupts filed bankruptcy petitions on September 27, 1961, and subsequently obtained income tax refunds. The refunds resulted from tax loss-carrybacks to prior years. The trustee contended the refunds constituted property of the estate under § 70(a)(5). The bankrupts claimed that on September 27 no funds were due from the Government since no refund could be claimed until the end of the year. The Supreme Court disagreed. An interest would not be disqualified as property because of "postponed enjoyment." The loss-carryback refund claim was held to be "sufficiently rooted in the pre-bankruptcy past" so that it constituted property of the estate under § 70(a)(5).

*In re Wright*, 157 F. 544 (2d Cir. 1907), concerned a bankrupt who was a managing agent for a life insurance company under a contract which entitled him to collect renewal premiums on policies, written prior to his bankruptcy, so long as he continued to perform under his contract. The Second Circuit determined that the renewal premiums, payable after bankruptcy, were property of the estate pursuant to Section 70 of the Bankruptcy Act despite the requirement under the contract of continued performance after the bankruptcy.

See also *Mutual Trust Life Insurance Company v. Wemyss*, 309 F.Supp. 1221 (D.C.Me.1970); *Matter of Fahys*, 18 F.Supp. 529 (D.C.N.Y.1937).

The scope of § 541 is much broader than § 70(a):

"The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified in section 70a of the Bankruptcy Act. . . ." S.Rep.No.95–989, 95th Cong. 2d Sess. 82, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5868.

"It is important to keep in mind, therefore, that the underlying theory of section 541(a)(1) is to bring into the estate *all* interests of the debtor in property as of the date the case is commenced. Thus, as a general rule, the estate created under section 541 will include all legal or equitable interests of the debtor in property, both tangible and intangible, including exempt property, as of the date the case is commenced." 4 Collier on Bankruptcy ¶ 541.06 (15th Ed.).

In *In re Marshburn*, 5 B.R. 711, 6 BCD 922, (Bkrtcy., D.Colo.1980), the debtor was employed as an insurance agent with State Farm Insurance Company. The debtor was party to an agreement providing that on termination he would receive a percentage of net premium collections and renewal premiums on insurance policies sold by him. The debtor's employment was terminated in October 1979; he filed a petition in bankruptcy in April 1980. The trustee claimed that the funds which were to be paid after the filing of the petition constituted property of the estate under § 541(a). The court considered the fact that the payments were only minimally dependent upon post-petition and post-termination services; i.e., the payments were dependent upon the substantial services rendered by the debtor before termination rather than post-petition or post-termination services. Therefore, the court held the funds payable post-petition to be property of the estate.

*In re Parker*, 9 B.R. 447, 7 BCD 456 (Bkrtcy., M.D.Ga.1981), presents a factual situation similar to that found in *Marshburn, supra*. The debtor in *Parker* was employed by the American Family Life Assurance Company. Pursuant to his employment contract he had an unconditional vested right to receive renewal commissions. The debtor terminated his employment shortly *before* he filed his petition in bankruptcy; thus, post-petition services were not required. The court cited several cases decided under the former Bankruptcy Act to the effect that renewal commissions under similar circumstances were property of the estate under § 70(a). The court then observed that § 541 has a much broader scope than § 70(a): "It is almost limitless under the new Code." *In re Parker*, 9 B.R. 447, 449. Further, the court correctly noted

that the debtor's estate at the time of filing consists of all legal and equitable interests in property as of the commencement of the case including that property necessary for a fresh start which the debtor could then exempt. The court concluded, therefore, that the renewal commissions were property of the estate under § 541.

The debtor cites *In re Harter*, 10 B.R. 272 (Bkrtcy., N.D.Ind.1981). *Harter* involved an entirely different situation, however, and is inapposite to the facts and laws in the instant case. The debtor, Harter, had retired from the Army in 1975 with a pension of approximately $6,000 payable annually providing that he was alive on the first day of each month. Judge Rodibaugh pointed out that Section 1315 of Title 10 of the United States Code provides that a member of the armed forces retired for length of service is entitled to " 'retired pay.' " Judge Rodibaugh viewed the Army benefits as "future wages" and concluded that those benefits were not property in which the debtor had an interest under Section 541 of the Code.

This court concludes that Iler's contract rights to renewal commissions passed to the estate under § 541(a) of the Bankruptcy Code.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.