**In the Matter of Joan K. OSBURN, Debtor.**

**Paul D. GILBERT Trustee In Bankruptcy, Plaintiff,**

v.

**Joan K. OSBURN and Ohio Public Employees Deferred Compensation Program, Defendants.**

**Bankruptcy No. 3–81–00573. Adv. No. 3–82–0316.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 6, 1986.

Paul D. Gilbert, Dayton, Ohio, plaintiff-trustee.

Toba Jeanne Feldman, Asst. Atty. Gen., Columbus, Ohio, for defendant Ohio Public Employees Deferred Compensation Program.

Donald F. Harker, III, Dayton, Ohio, for defendant-debtor Osburn.

## DECISION DENYING DEFENDANT–OHIO PUBLIC EMPLOYEES DEFERRED COMPENSATION PROGRAM'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF–TRUSTEE'S COMPLAINT FOR TURNOVER, AND GRANTING DEFENDANT–DEBTOR'S CLAIMED EXEMPTION

THOMAS F. WALDRON, Bankruptcy Judge.

### PROCEDURAL POSTURE

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court is determined to be a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E), in which the Chapter 7 Trustee seeks an order to turn over property of the estate. This matter is before the court on defendant—Ohio Public Employees Deferred Compensation Program's (hereinafter the Ohio Program) motion for summary judgment and affidavit, defendant-debtor's application for an evidentiary hearing, plaintiff-trustee's memorandum in opposition to debtor's application and in opposition to defendant—Ohio Program's motion for summary judgment, the January 4, 1983 Order of this court reciting the parties' stipulations and on court's Order that upon the filing of reply briefs the case would be taken under

advisement, the brief of defendant-debtor, the supplemental brief of the plaintiff-trustee, and the reply brief of defendant—Ohio Program.

Plaintiff's complaint alleges that funds from defendant-debtor's wages withheld by defendant-debtor's employer under a voluntary deferred compensation program for state employees and on deposit with the defendant—Ohio Program on February 24, 1981, the date on which the bankruptcy was filed, belong to the bankruptcy estate and should be turned over to the trustee. The trustee asserts that under the "Plan Agreement" adopted by the Ohio Program a participating employee may withdraw funds on deposit in case of financial hardship, which is defined as, among other things, impending personal bankruptcy. Both defendants' answers admit all the allegations in the complaint, except that the funds are assets of the bankruptcy estate and that the employee may withdraw his funds in case of financial hardship. Defendant—Ohio Program also asserts as a defense that the funds at issue are not property of the debtor, but have become property of the debtor's employer and thus are beyond the reach of the debtor's trustee in bankruptcy.

Defendant—Ohio Program filed a motion for summary judgment pursuant to Rules Civ.Proc.R. 56, on the grounds that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law. Defendant—Ohio Program's memorandum in support of the motion for summary judgment argues that the debtor does not hold an interest in property under 11 U.S.C. § 541 because the assets at issue belong not to her, but to her employer under a tax deferral plan authorized by the federal government under 26 U.S.C.A. § 457 (West Cum.Supp.1985) and by the State of Ohio under OH.REV.CODE ANN. § 145.73 (Page Supp.1984), which assets can only be reached by the debtor-employee upon retirement, termination of employment or financial hardship. Defendant—Ohio Program argues that financial hardship as defined under the plan and under 26 C.F.R. § 1.457–2(h)(4), (5) (1985)

does not include bankruptcy itself, only "impending personal bankruptcy," and that its purpose is to permit cessation of deferrals and distribution of benefits for unforeseen emergencies and only to the extent necessary to satisfy such emergency. In the alternative, defendant—Ohio Program contends that even if the funds constitute property of the estate, they are entitled to be exempted out of the estate under 11 U.S.C. § 522(b)(2)(A) which provides:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.

. . . .

(2)(A) any property that is exempt under Federal Law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place.

For the reasons that follow, we find that (1) the funds at issue are includable in the defendant-debtor's bankruptcy estate, and (2) although not exempt under 11 U.S.C. § 522(b)(2)(A), the funds are exempt under OH.REV.CODE § 2329.66(A)(10).

## FINDINGS OF FACT

Pursuant to an Order of this court entered on January 4, 1983, the parties agreed to the following stipulations:

1. Joan K. Osburn, Debtor, is a participant in the Ohio Public Employees Deferred Compensation Program (hereinafter referred to as "Program").

2. The Program is operated pursuant to 26 U.S.C. § 457 as a nonqualified unfunded deferred compensation plan and has received approval as such from the United States Internal Revenue Service. Such approval is evidenced by letter ruling which appears attached to defendant

Program's previously filed Motion for Summary Judgment and is hereby incorporated by reference.

3. Plaintiff contends that Stipulation 2 is legally irrelevant.

4. The terms governing a participant's participation in the Program are set forth in the Plan Agreement. Such Plan Agreement is attached to defendant Program's previously filed Motion for Summary Judgment and is hereby incorporated by reference.

5. Debtor has deferred amounts in the sum of $489.98.

6. At no time has Debtor applied for a distribution of deferred amounts pursuant to the Plan Agreement.

By way of background, 26 U.S.C. § 457 entitled "Deferred compensation plans with respect to service for State and local government" authorizes a state to enact a plan by which state employees may defer a portion of their income and thereby not have to pay federal income tax on the portion so deferred and any interest accrued thereon until the compensation is paid or otherwise made available to the participant. Among other requirements, to qualify for tax deferral status a plan must not "provide that amounts payable under the plan will be made available to participants or other beneficiaries earlier than when the participant is separated from service with the State or is faced with an unforeseeable emergency (determined in the manner prescribed by the Secretary by regulation)," and must provide that:

(A) all amounts of compensation deferred under the plan,

(B) all property and rights purchased with such amounts, and

(C) all income attributable to such amounts, property, or rights, shall remain (until made available to the participant or other beneficiary solely the property and rights of the State (without being restricted to the provision of benefits under the plan) subject only to the claims of the State's general creditors.

26 U.S.C.A. § 457(b)(5), (6) (West Cum. Supp.1985).

Ohio's enabling legislation under OH. REV.CODE ANN. § 145.73 (Page Supp. 1984) authorizes the Ohio public employees deferred compensation board to initiate a plan for the approval of the Internal Revenue Service which permits eligible employees to participate in a program whereby they can defer a portion of their compensation, giving a reasonable number of options to the employee for investment of the deferred funds, including life insurance and annuities, meeting the Internal Revenue Service's "terms of distribution, designation of beneficiaries, withdrawal upon disability, financial hardship, or termination of public employment, and other optional provisions." *Id.* at § 145.73(C). "Such a deferred compensation program shall be in addition to any retirement or other benefit provided by law for employees of this state." *Id.* at § 145.73(D).

The plan actually adopted by defendant—Ohio Program provides, in relevant part, that it is a voluntary contractual arrangement between the employer and the participating employee who elects to defer a portion of his compensation under it and that the employer becomes the sole owner of the comingled assets, subject to all the claims of creditors of the employer, with the participating employee's interest being that of a general creditor. Plan at Article I, Items 3 and 4; Items 2.01, 3.02, 3.04, 3.05 and 8.08. The employee may terminate his election to participate, but benefits may not be distributed until the employee terminates employment, retires, becomes disabled, or dies (in which case the participating employee's beneficiary receives the benefits), or suffers financial hardship. Plan at 2.03, 4.01 and 6.01. To qualify for financial hardship, the participating employee must obtain the employer's approval. Financial hardship is defined as:

[A] situation which is limited to a real emergency beyond the Participating Employee's or Continuing Member's control and which would cause him great hardship if cessation or early distribution of benefits were not permitted. Financial Hardship includes, but is not limited to,

the following: impending personal bankruptcy; unexpected or unreimbursed personal expenses resulting from illness or accident of the Participating Employee or Continuing Member or any dependent thereof; major property loss or any other type of unexpected or unreimbursed personal expense of a major nature that would not normally be budgetable. Forseeable personal expenditures normally budgetable, such as a down payment for a home, the purchase of an automobile, college or other schooling expenses, etc., will not constitute a Financial Hardship. The decision by the Employer as to whether a Financial Hardship exists shall be final and conclusive. Notwithstanding any other provisions contained in this Plan, a Participating Employee, who encounters a Financial Hardship, may apply to the Employer for a cessation of the amount of compensation currently being deferred. If the Employer approves such application, the cessation shall be effective on the first pay period of the month next following approval.

Plan at 6.01, 6.02.

The employer has total control over the plan's terms, specifically declines to guarantee any return on the employee's funds, and requires the employee to accept all investment risk of loss and to hold the employer harmless for loss of funds, nonperformance of duties or negligence (other than fraud or wrongful taking). Plan at 3.03, 8.01, 9.03 and 9.04. Where the participant's account is less than $2,500, the employer shall distribute it to the employee in a lump sum. Plan at 4.03. Finally, the plan provides two anti-alienation clauses.

Except as otherwise required by law, the rights of the Participating Employee (including any compensation deferred or benefits paid) under this Plan shall not be subject to the rights of creditors of the Participating Employee or any Beneficiary, and shall be exempt from execution, attachment, garnishment, prior assignment, transfer or operation of law in the event of the bankruptcy or insolvency, or any other judicial relief or order for creditors or other third persons.

Plan at 8.07.

. . . .

Neither the Participating employee nor a Continuing Member shall have any right to commute, sell, assign, emcumber, hypothecate, transfer or otherwise convey the right to receive any payments hereunder which payments and right thereto are expressly declared to be non-assignable and non-transferable; and, any such assignment or transfer shall not be recognized by the Employer.

Plan at 9.07.

Finally, the Bankruptcy Judge to whom this case was previously assigned found "The Debtor claimed that the money she contributed to the Plan is exempt under O.R.C. 2329.66(A)(10). The Trustee objected to the exemption." See Order entered April 5, 1982.

Since the parties have stipulated that there are no genuine issues as to any material facts, we proceed with the issues at law.

### ISSUE PRESENTED

The precise issue before this court is whether the monies deposited by defendant-debtor in a deferred compensation plan authorized by the State of Ohio which claims the monies as its own and not as the debtor's must be turned over to the Chapter 7 Trustee as property of the estate under 11 U.S.C. § 541(a) or whether they can be excluded from the estate under 11 U.S.C. § 541(c)(2), or if included in the estate, whether they can be exempted out under 11 U.S.C. § 522(b)(2)(A) or OH.REV. CODE ANN. § 2329.66(A)(10)(b).

### CONCLUSIONS OF LAW

#### A. Property Of The Estate—11 U.S.C. § 541(a)(1)

██ Defendant—Ohio Program contends that the funds in question are not property of the debtor's estate under 11 U.S.C. § 541(a)(1) because title is vested in the Ohio Program and not with the debtor.

Even under § 70(a) (11 U.S.C. § 110(a)), the predecessor statute to § 541(a), property of the debtor "has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966) (citing *Horton v. Moore*, 110 F.2d 189 (6th Cir. 1940), where a contingent, postponed interest in a trust was held property of the estate). The enactment of the Bankruptcy Reform Act of 1978 further emphasized the broad nature of property of the debtor by providing that the filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" ... "wherever located and by whomever held." 11 U.S.C. § 541(a). Control "is not the determinative factor." *In re Iler*, 18 B.R. 855, 856 (Bankr.D.Tenn.1982). The determinative factor is that the debtor hold an interest in the property as of the date of the commencement of the case. The interest can be in tangible or intangible property, a cause of action, a chose in action, or in any of the kinds of property specified in § 70(a) of the Bankruptcy Act. H.R. No. 595, 95th Cong. 1st Sess. 367 (1977), *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 5787, 6323. The fact that the debtor's possession of the funds is contingent on subsequent events does not alter their inclusion in the estate. *Rau v. Ryerson (In re Ryerson)* 739 F.2d 1423, 1425 (9th Cir.1983). Although legal title may be presently held in the name of the defendant—Ohio Program, the funds so held came from the earnings of the defendant-debtor as a state employee and under her contract with her employer will ultimately be returned to her or to her designated beneficiary, provided the funds are not lost through improvident investments or through the bankruptcy of the state, in which case the debtor can pursue her rights as a general creditor. Thus we find that the debtor does have an interest in these funds which constitute property of the estate, an interest which the state cannot defeat by contract.

## B. Property Excluded From The Estate—11 U.S.C. § 541(c)(2)

Although not specifically addressed by the defendants, resolution of this proceeding requires a discussion of whether the funds in question can be excluded under 11 U.S.C. § 541(c)(2) which provides: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Reported cases have discussed various deferred compensation, investment, etc. plans, commonly referred to as retirement plans, in terms of a trust where the plan contains provisions prohibiting the alienation of funds for the use of creditors (e.g., Plan at 8.07, 9.07 *supra*). Based on the legislative history of § 541(c)(2), the prevailing interpretation of the phrase "applicable nonbankruptcy law" is that it "was intended as a narrow reference to state 'spendthrift trust' law and not as a broad reference to all other law, both federal and state, including ERISA." *Goff v. Taylor (In re Goff)*, 706 F.2d 574, 577 (5th Cir. 1983) (holding that self-settled Keogh plan did not qualify for the spendthrift trust exclusion). *See also In re Daniel*, 3 Bankr.L.Rep. (CCH) ¶ 70,763, at 87, 757 (9th Cir. Sept. 20, 1985); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985); *Parkinson v. Bradford Trust Company of Boston (In re O'Brien)*, 50 B.R. 67 (Bankr.E.D.Va.1985); and *In re Kelley*, 31 B.R. 786 (Bankr.N.D. Oh.1983). *Warren v. G.M. Scott & Sons (In re Phillips)* 34 B.R. 543 (Bankr.S.D.Oh. 1983) took an opposite position from *Goff* and found a debtor's interest in an ERISA plan excludable from the bankruptcy estate on the grounds that the alienation restrictions were enforceable against general creditors under nonbankruptcy law. We decline to follow *Phillips* and find the legislative history and *Goff* and its progeny persuasive on the point that Congress intended to except from property of the estate only traditional spendthrift trusts.

Subsection (c) invalidates restrictions on the transfer of property of the debtor, in

order that all of the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law.

H.R. 595, 95th Cong. 1st Sess. 369 (1977), *reprinted in* 1978 U.S.CODE CONG. & AD NEWS 6325.

The determination of whether the deferred compensation plan presented to this court can be excluded from property of the estate rests on whether the plan can be considered a spendthrift trust under applicable nonbankruptcy law, or more precisely whether the state has created a statutory spendthrift trust. Only one case has been found discussing a plan similar to Ohio's. In *Herrick v. State*, 149 Cal.App.3d 156, 196 Cal.Rptr. 663 (Cal.App. 2 Dist.1983), participants in California's Deferred Compensation Plan for public employees sued the state on the grounds that the state's methods for assessing and collecting administrative costs violated its fiduciary duty as trustee of the plan. The California State Court of Appeals, Second District, held that there was no violation of fiduciary duty because no trust relationship existed. The factors compelling its decision are applicable to the case before this court. The plan was established for the sole purpose of providing a federal tax advantage to state employees. There was no evidence that the purported settlor intended to establish a trust and there was no acceptance by the purported trustee of a duty to be so bound. On the contrary, the purported trustee disclaimed any responsibility for failure to use reasonable care in the selection of investments. Furthermore, there was no separation of legal and equitable ownership, which is the hallmark of a trust;

rather the state maintained sole ownership, with the participants' status that of a general creditor. *Id.* at 160–62, 196 Cal.Rptr. at 666–67; *see also* Findings of Fact, *supra*. That the state purposely avoided a trust relationship is evident from the state's failure to set forth a trust relationship as a ground for exclusion of the funds in issue in this bankruptcy estate. *See also Leased Pet Departments, Inc. v. Cook United, Inc. (In re Cook United, Inc.)*, 50 B.R. 559 (Bankr.N.D.Oh.1985) (holding that a relationship arising out of a lease agreement whereby the plaintiff was to operate a pet department in debtor's stores was not a trust relationship, but that of a debtor-creditor, because the comingling of funds destroyed the possibility of a trust relationship).

The interest of the debtor in the case before this court is a chose in action based on a contract. Such rights are property of the estate. *In re Ryerson*, 739 F.2d 1423 (9th Cir.1984) (holding a contract right to severance pay contingent on termination of employment, which employment did not cease until nine months after bankruptcy was filed, includable in the bankruptcy estate to the extent of the debtor's pre-petition service); *In re Iler*, 18 B.R. 855 (Bankr.D.Tenn.1982) (holding that a contract right to funds held by the debtor-insurance agent's former employer under a deferred compensation plan providing for payment to the agent or his beneficiary upon his death, disability or termination of the contract includable in his estate even though at the time of filing his petition, the funds were beyond the debtor's control); *see also* Slip Op. No. 5859, Or.Att'y Gen., Oct. 7, 1985 (available on LEXIS, Ore library, Ag file) (stating that a bankrupt participant's contract claim for future payment of compensation deferred under an Oregon plan similar to Ohio's is an asset of the bankruptcy estate which may be liquidated notwithstanding the provisions against assignment). Consequently, we find that the funds being held by defendant—Ohio Program are part of the bank-

ruptcy estate under § 541(a)(1) and not subject to exclusion under § 541(c)(2).

### C. Property Exempted From The Estate—11 U.S.C. § 522(b)(2)(A)

■ Defendant—Ohio Program argues that even if the funds are initially part of the bankruptcy estate, they can be exempted out under 11 U.S.C. § 522(b)(2)(A) as property "exempt under Federal law, other than subsection (d) of this section, or State or local law." The defendant-debtor, however, did not claim such an exemption on her schedules. Although the assertion of an exemption under bankruptcy law is personal to the debtor and may not be asserted by others in their behalf, *In re Ross*, 18 B.R. 364, 369 (N.D.N.Y.1982), *aff'd sub nom. Regan v. Ross*, 691 F.2d 81 (2d Cir. 1982), the issue is addressed here to provide resolution of the issues before the court and to prevent piecemeal litigation.

■ The defendant—Ohio Program claims the exemption on the basis of 26 U.S.C. § 457, and accompanying Internal Revenue Service rulings and regulations, basically arguing that because the statute provides that the funds must belong to the state to qualify the participant for a tax benefit that the statute has thereby· exempted the funds from a bankrupt's estate. We find this argument without merit. It should be observed initially that § 457 does not itself contain an anti-alienation provision; rather the anti-alienation provisions are merely inferred from § 457(b)(6)(C) which provides that the funds must belong to the state, "subject only to the claims of the State's general creditors." A federal exemption must be explicitly granted in the statute. *In re Goff,* 706 F.2d at 585. Statutes meeting this requirement are cited in the legislative history of § 457 and include:

- —Foreign Service Retirement and Disability payments, 22 U.S.C. 1104;
- —Social security payments, 42 U.S.C. 407;
- —Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717;
- —Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601;
- —Civil service retirement benefits, 5 U.S.C. 729, 2265;
- —Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916;
- —Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L);
- —Veterans benefits, 45 U.S.C. 352(E);
- —Special pensions paid to winners of the ·Congressional Medal of Honor, 38 U.S.C. 3101; and,
- —Federal homestead lands on debts contracted before issuance of the. patent, 43 U.S.C. 175.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 360 (1977), *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 6316.

Although the list is not exhaustive, it has been held that federal laws establishing ERISA—qualified retirement trusts actually containing provisions prohibiting assignment or alienation as a requirement for qualification (26 U.S.C. § 401(a)(13), 29 U.S.C. § 1056(d)(1)), in contrast to the situation before this court, still are not exempt under § 522(b)(2)(A). *In re Goff,* 706 F.2d at 585. This conclusion rests on the distinction between the explicit and absolute nature of the restraints on alienation found in the statutes cited above as opposed to the contingent nature of the restraint in ERISA's case.

> ERISA merely provides that *as a condition of obtaining qualified status*—with its attendant tax and other benefits—a pension plan must preclude alienation or assignment of its benefits. It does not prohibit pension funds from permitting alienation or assignment; rather, while it encourages and favors qualified plans, it envisions that "disqualified" plans may be formed which are still subject to ERISA's regulatory scheme but which do not restrict alienation or assignment. By contrast, the listed statutes which establish or guarantee certain benefits *directly preclude all* such benefits from alienation or assignment (emphasis in original; citations omitted).

*Id.* The reasoning dealing with ERISA applies equally to the Ohio Program enacted under 26 U.S.C. § 457.

■ Furthermore, an analysis of the pensions and benefits listed in the House Report results in a finding that they are "all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government." *In re Lichstrahl,* 750 F.2d at 1491. They are specifically "entitlement" benefits, i.e., benefits which entitle the payee to receive *present periodic payments ...* and do not relate to the exemption of a private, non-entitlement trust *res* from which *future periodic payments* are made" (emphasis in original). *In re O'Brien,* 50 B.R. at 79. In contrast, the benefits to be derived under 26 U.S.C. § 457 are not entitlement benefits, but derive from voluntary participation and are not present periodic payments needed for current support. Accordingly, we find the Ohio Program not exempt under 11 U.S.C. § 522(a)(2)(A).

### D. Property Exempted From The Estate—OH.REV.CODE § 2329.66(A)(10)

■ Having concluded that the plan is not exempt under federal law, we must now determine whether it is exempt under state law, as the debtor has claimed the entire amount exempt under OHIO REV. CODE ANN. § 2329.66(A)(10) (Page Supp. 1984). Although the debtor did not specify under which subpart of § 2329.66(A)(10) she claimed her exemption, the only one arguably available is (A)(10)(b) which provides an exemption for a: "person's right to receive a payment under any pension, annuity, or similar plan or contract ... on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of his dependents." Although there are no cases in Ohio specifically categorizing the Ohio Program as a "similar plan or contract" under the above statute, we find that it is such a plan because it provides for payments to begin on the participant's disability, death or retirement.

The question remains, however, whether such payments are "reasonably necessary for the support" of the debtor and any of her dependents. In determining what "reasonably necessary" means we look to the legislative history of the federal exemption statute, 11 U.S.C. § 522(d)(10)(E), after which the state statute is modelled. It indicates that the federal exemptions were in turn based on the Uniform Exemptions Act, promulgated by the Commissioners of Uniform State Laws in 1976. H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), *reprinted in* 1978 U.S.CODE CONG. & AD. NEWS 6317.

> Section 6 of the Uniform Exemptions Act defined the phrase "property to the extent reasonably necessary for the support of [the debtor] and his dependents" as "property required to meet the present and anticipated needs of the individual and his dependents as determined ... after consideration of the individual's responsibilities and all of the present and anticipated property and income of the individual, including that which is exempt."

*In re Kochell,* 732 F.2d 564, 565 (7th Cir. 1984); *In re Phillips,* 45 B.R. 529, 533 (Bankr.N.D.Oh.1984).

■ The Schedules and Statement of Affairs filed in this case reveal that the debtor had earned less than $12,000.00 in each of the two years prior to filing her Petition, owned no real estate, had a twelve (12) year old automobile, minimal other personal property, and a majority of her debts were for medical expenses incurred over a two-year period prior to filing her Petition. In such circumstances, the court finds the minimal amount at issue of $489.98 as "reasonably necessary for the support" of the debtor, and accordingly determines the funds to be exempt under OH.REV.CODE § 2329.66(A)(10)(b).

### HOLDING

The funds in question, $489.98 on deposit with the Ohio Public Employees Deferred Compensation Program, are property of the estate, not subject to exclusion under

federal law, but subject to an exemption under OH.REV.CODE § 2329.66(A)(10)(b).

Accordingly, the court DENIES defendant—Ohio Program's motion for summary judgment, DENIES the Plaintiff-trustee's complaint requesting a turnover of the funds in question, and GRANTS Defendant-Debtor's claimed exemption.