In re John B. CONNALLY, Debtor(s).

Bankruptcy No. 87–11550.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Jan. 17, 1989.

Myron M. Sheinfeld, Sheinfeld, Maley & Kay, Austin, Tex., for debtor.

Harvey D. Caughey, Austin, Tex., for Trustee.

## MEMORANDUM OPINION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

LARRY E. KELLY, Chief Judge.

On the 17th day of November, 1988 came on to be considered the Amended Motion of the Debtor requesting determination of certain property as eligible for exemption or, alternatively as not to be included as property of the estate as defined at 11 U.S.C. § 541. Also heard was Lockheed Finance Corporation's Response and the Trustee's Response in Opposition to the Debtor's Motion.

The Court has jurisdiction over this proceeding as a core proceeding under the provisions of 28 U.S.C. § 157(b)(2)(B).

Having reviewed the factual stipulations submitted by the parties, the briefs, and argument of counsel the Court makes the following Findings of Fact and Conclusions of Law. To the extent that a Finding of Fact should more appropriately be considered a Conclusion of Law or conversely, it is hereby so considered. It is the intent of the Court to make these Findings as required by Bankruptcy Rule 7052.

## FINDINGS OF FACT

1. John B. Connally commenced his case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on July 31, 1987.

2. Mr. Connally is a former non-employee member of the Board of Directors of Ford Motor Company. He served from approximately 1981 to 1987, at which time he reached the mandatory retirement age of 70. In this capacity, Mr. Connally was a participant in the Ford Motor Company Deferred Compensation Plan for Non–Em-

ployee Directors (hereinafter referred to as the "Ford Plan").

3. As a non-employee director he received compensation in the form of a retainer, attendance fees for directors and various committee meetings, and he was reimbursed for certain expenses.

4. The Ford Plan was adopted in 1983. It was introduced into evidence as Movant's Exhibit No. 1 and is appended to this opinion in its entirety. Movant's Exhibit No. 1 was stipulated to by the parties as being a true and correct copy of the Ford Plan and its provisions are incorporated herein. As contemplated in Paragraph IV of the Ford Plan, Mr. Connally made a voluntary and irrevocable election to defer his compensation to a lump sum payment, to be paid in the year following the year his service as a director terminated. (See Ford Plan ¶ IV and VI(b) & (c)).

5. By transmittal letter dated January 15, 1988 and received on January 19, 1988, Mr. Connally received a check for $76,-936.07 from Ford Motor Company.

6. The check represented the total payment to Mr. Connally of his deferred "director fees" as contemplated in Paragraph VI(c) of the Ford Plan.

7. Mr. Connally has been frank and open with the Court about these funds and he has deposited them in a segregated bank account.

8. His present schedules in his bankruptcy case do not list these funds as exempt. However, Mr. Connally states that he intends to amend his schedules to claim the funds as exempt pursuant to Texas Property Code § 42.0021.[1]

9. At the time of the filing of his bankruptcy petition, Mr. Connally claimed state exemptions as allowed by 11 U.S.C. § 522(b)(2)(A).

## ISSUES

The primary issue in this case is whether the check received by Mr. Connally in January of 1988 is property of the estate. If this Court determines that the interest of the Debtor is property of the estate, then it must determine whether such interest is the proper subject of an exemption under Texas Property Code § 42.0021.

## DISCUSSION

The Debtor takes a rather circuitous route in convincing the Court that the check which Mr. Connally received from Ford's compensation plan should not be included as property of the estate. The rationale for his conclusion is that the "Ford Plan" was essentially a "pension plan" and that his right to the monies did not vest until receipt of his check in January of 1988. Consequently, the monies should not be included as property of the estate as they were merely a future interest at the time of filing. Alternatively the Debtor argues that if included as property of the estate, the funds should be eligible for exemption under Texas Property Code § 42.0021.

 First, we address the issue of property of the estate. The Debtor posits that the funds at issue were not vested until after Mr. Connally had reached mandatory retirement age and resigned from the

---

1. Tex.Prop.Code § 42.0021:

 (a) In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract, including a retirement plan for self-employed individuals, or under an individual retirement account or an individual retirement annuity including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986.

 A person's right to the assets held in or to receive payments, whether vested or not, under a government or church plan or contract is also exempt unless the plan or contract does not qualify under the definition of a government or church plan under the applicable provisions of the federal Employee Retirement Income Security Act of 1974.

 (b) Contributions to an individual retirement account that exceed the amounts deductible under the applicable provisions of the Internal Revenue Code of 1986 and any accrued earnings on such contributions are not exempt under this section unless otherwise exempt by law.

Board of Directors. Therefore the Debtor asserts he did not have any right of absolute ownership when his bankruptcy case was filed.

He points out the provisions of Paragraph IX and X of the Ford Plan to support this position. The Debtor concludes by asserting that in any event the funds represent the corpus of a spend thrift trust and as such do not form any part of the property of the estate pursuant to 11 U.S.C. § 541(c)(2). We find this argument to be in error.

The check Mr. Connally received from Ford Motor Company does appear to be from a qualified pension plan as defined by ERISA.[2] The contract between Mr. Connally and the Ford Motor Company is explicit. On its face states that it is "deferred compensation". Paragraph IV of the Ford Plan deals with election of deferral. It states that the compensation which may be deferred (exclusive of expense reimbursement) is compensation otherwise payable during the following year for *service* on the Board of Directors of the Company and its committees and for attending meetings of the Board of Directors. "... Such compensation shall be *credited* to the participants deferred compensation account on the date the compensation is otherwise payable."[3] (emphasis added). The directors were entitled through the contract to make an annual election as to whether they would receive their compensation at that time or defer it to be paid one year following the year in which the participant's service as a director terminated.[4] This Plan was clearly intended to serve as a pension plan to allow former directors to

defer their earned income until one year after their service on the Board of Directors was terminated. Apparently a director could voluntarily terminate service at any time, however, testimony indicated that Ford Motor Company required mandatory termination upon reaching the age of 70, which Mr. Connally did in 1987.

The Debtor does not, however, properly characterize Paragraph IX of the Ford Plan. It states as follows:

"A participant shall not have any interest in the deferred compensation and interest equivalents credited to his or her account until it is distributed in accordance with the Plan. All amounts deferred under the Plan shall remain the sole property of the company, subject to the claims of its general creditors and available for its use for whatever purposes are desired. With respect to amounts deferred, a participant is merely a general creditor of the company; and the obligation to the company hereunder is purely contractual and shall not be funded or secured in any way."

11 U.S.C. § 541(a) provides:

"The commencement of a case under § 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) except as provided in subsection (b) and (c)(2), *all legal or equitable interests of the debtor in property as of the commencement of the case.*" (Emphasis added.)

The facts evidence that all conditions precedent to the Debtor becoming entitled to the deferred compensation funds were

2. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(2)(A) provides:

Except as provided in subparagraph (b), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fun, or program—

(ii) provides that an employee benefit plan is any plan which "results in a deferral of income by employees for periods extending to

the termination of covered employment or beyond."

3. Paragraph IV(A) of the Ford Motor Company's Deferred Compensation Plan.

4. Paragraph VI(b) of Ford Motor Company's Deferred Compensation Plan For Non–Employee Directors states that "[t]he amount credited to a participant's deferred compensation account for each year shall be payable in cash in a lump sum or in up to ten annual installments, in or commencing in, the year following the year in which the participant's service as a director terminates."

performed in full, prior to bankruptcy. The "account" therefore was established and liquidated prior to bankruptcy in accordance with the terms of the Debtor's contract with Ford Motor Company. Although the Debtor could not actually reach any separate or specifically segregated part of the funds, his *claim* for payment of an amount certain was fully vested when he retired. He had a legal claim against Ford Motor Company for that sum, subject only to the fact that the funds were not to be paid until January 1988, being the first January after the year the Debtor reached mandatory retirement.

11 U.S.C. § 101(4) defines a claim as follows:

"(4) "Claim" means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..."

The Debtor's claim to payment of the deferred amounts earned prior to bankruptcy is a legal interest within the meaning of 11 U.S.C. § 541(a)(1). This Court concludes that the Debtor's right to payment of his deferred compensation sum was property of the estate when the case was commenced.

■ Debtors alternative argument is that the fund is in the nature of a spend-thrift trust and therefore is not property of the estate. He refers the Court to Code § 541(c)(2). It provides that certain interests do not become property of the estate and defines those interests to be as follows:

"(c)(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title."

The Debtor points to Paragraph IX of the Ford Plan as providing the restriction on the transfer of his beneficial interest. Apparently the Debtor concludes that the terms therein satisfy the meaning of 11 U.S.C. § 541(c)(2). However, it is this very provision which makes the Debtors argument inapplicable. The Debtor's interest is a contractual right, making him a creditor of Ford as his interest vests. He is not a beneficiary of a trust. Other courts have construed similar deferred compensation arrangements and have concluded that such compensation is property of the estate and not excludable under 11 U.S.C. § 541(c)(2). See, e.g., *In re Klueter*, 77 B.R. 622 (Bankr.N.D.Oh.1987); *Matter of Osburn*, 56 B.R. 867 (Bankr.S.D.Oh.1986); and *In re Iler*, 18 B.R. 855 (Bankr.E.D. Tenn.1982).

Additionally, if a spend thrift trust were established by Paragraph IX of the Ford Plan, the facts of this case would properly characterize it as a self-settled trust. The Debtor claims that this is an employer-settled plan and that all funds came from Ford Motor Company. However at all relevant times the Debtor had the election to be paid for his services or to defer such payment. It was within the Debtor's discretion to elect deferral. Further, it was within the Debtor's discretion to determine when he would terminate his services, at least until he reached mandatory retirement. Therefore, it was within the control of the Debtor to determine when the funds would be paid. Further, it was the Debtor's earned, but deferred funds which constitute the "corpus" of this "alleged trust", not considerations from Ford. The Fifth Circuit, among others, has held that if the debtor's participation in a plan is voluntary and if he controls the contributions made to a plan, it is self-settled and the corpus is property of the estate. See, e.g., *Matter of Brooks*, 844 F.2d 258 (5th Cir.1988); *Matter of Moody*, 837 F.2d 719 (5th Cir.1988); *Matter of Reagan*, 741 F.2d 95 (5th Cir. 1984); and *Matter of Goff*, 706 F.2d 574 (5th Cir.1983). This Court concludes that there is no trust and 11 U.S.C. § 541(c)(2) is inapplicable. However, were a trust to exist, the facts of this case show that it is self-settled and the corpus is still property of the Debtor's estate.

■ The second issue raised by the Debtor's Motion is whether this property is eligible to be exempted under Texas Property Code § 42.0021. In support of the Debtor's contention that Ford Motor Company's pension plan can be exempted under

the Texas Property Code, the Debtor cites to *In re Donald Joseph Ewald*, 73 B.R. 792 (Bankr.W.D.Tex.1987). Having written that opinion, this Court is familiar with the facts of the case and concludes that *Ewald* is distinguishable and is not dispositive of this issue. The threshold question in *Ewald* was whether any interest of the debtor in his non-debtor *spouse's* pension plan would be eligible to be exempted under Bankruptcy Code 11 U.S.C. § 522(b)(2)(A), (d), and 541(a). There was no question in *Ewald* that the wife's profit sharing plan was a valid ERISA qualified plan and that neither the debtor nor his employer had contributed any of the funds which were in her plan. Furthermore, we do not address any community property law questions in this case as we did in *Ewald.*

A creditor in this case, Lockheed Finance Corporation, in its objection to the allowance of exemption refers the Court to *In the Matter of Jack G. Brooks, M.D.* 844 F.2d 258 (5th Cir.1988). In that decision, Judge Rubin writing for the court, held that under Texas law an ERISA qualified pension plan established by the debtors professional association was not a spendthrift trust, citing *In the Matter of Goff,* 706 F.2d 574 (5th Cir.1983). The Brooks case specifically addressed ERISA/qualified plans, however, it also addressed the Debtor's second issue as to whether the money should be exempted under the Texas Property Code Referring to the amendment to the Texas Property Code, which is now Texas Property Code § 42.0021, the Court noted its effective date as being September 1, 1987. The Court clearly stated that the statute was not retroactive, and therefore it had to base its decision on state law as it stood when the bankruptcy case was filed. *See Brooks* at p. 261. We are similarly constrained and conclude as did the *Brooks* court that the character of the alleged "exempt" property must be determined at the time of the filing of the voluntary petition.[5] This results in the Debtor's preclusion to invoke § 42.0021 of the Texas Property Code to exempt the lump sum distribution at issue.

## CONCLUSIONS OF LAW

A. The proceeds represented by the check received from Ford Motor Company in January 1988 are property of the Debtor's estate.

B. All interest earned on these proceeds are property of the Debtor's estate.

C. The Ford Plan does not establish a spendthrift trust within the meaning of 11 U.S.C. § 541(c)(2).

D. If the Ford Plan establishes a spendthrift trust, it is self-settled within the meaning of Texas law. Therefore the corpus of such trust is still be property of the estate under the facts of this case.

E. The Debtor is not entitled to claim the deferred compensation funds as exempt property pursuant to Texas Property Code § 42.0021 as the statute is not retroactive and is therefore inapplicable to the facts of this case.

## CONCLUSIONS

Mr. Connally may not invoke the protection of § 42.0021 of the Texas Property Code as the statute is not retroactive and he filed his voluntary petition prior to the effective date of the statute. It follows, that the question raised by the Debtor of how other states have defined "deferred compensation plans", with regard to their state exemption laws, is superfluous to the outcome of this adjudication. Although Mr. Connally may have claimed his alleged "retirement funds" as exempt under the federal exemption statute, 11 U.S.C. § 522(d)(10)(E), he did not. Rather, he chose the more generous personal property exemptions provided by this state's laws. Those statutes have a long legislative histo-

---

**5.** *See* Hall, Retirement Benefits: Texas Property Code Amendment, Texas Bar Journal 993, 994 (October 1987).

ry based on this state's constitutional protections. However, § 42.0021 of the Texas Property Code does not enjoy a similar history, but rather evolved as legislative "knee-jerk" to a judicial pronouncement[6] and was still in its evolutionary stage at the time of Mr. Connally's bankruptcy filing.

In following the case law before us, we also must conclude that the funds received by Mr. Connally from the Ford Motor Company's Plan are not excludable from the bankruptcy estate as a spendthrift trust under 11 U.S.C. § 541(c)(2).[7] "Referring again to the authority of In re Goff, the Fifth Circuit noted that qualified pension plans qualify for exemption under state law and bankruptcy code provisions as long as they qualify as 'spendthrift trust' plans under applicable state law." *In re Ewald,* 73 B.R. 792, 795 (Bankr.W.D.Tex.1987).[8] Here, no trust has been established. 2nd Restatement of Trusts, § 23 (Vol. 4, 1987).

Bankruptcy courts are courts of equity, and in spite of Mr. Connally's arguments concerning the construction of the Texas Property Code as amended by § 42.0021 and the prerequisite liberality mandated both by the Texas statute and the canons of statutory construction concerning exemption statutes, the Court is not persuaded. There is no question of controverted law before us but rather a principle of equity. This Court is not unsympathetic to the plea of any party seeking to reorganize his financial affairs, nor is it unmindful of the legislative intent behind the Bankruptcy Code to assist in affording honest debtors such as Mr. Connally a fresh start. Nevertheless, Mr. Connally's plea comes too late to use the exemption statute in question.

An Order in conformance with these Findings will be entered of even date herewith.

6. *In the Matter of Brooks,* 844 F.2d 258, 261 (5th Cir.1988).

7. *In re Goff, supra* at 580 ("Congress intended to exclude only trust funds in the nature of 'spendthrift trusts' from the property of the estate.")

EXHIBIT 1

FORD MOTOR COMPANY

DEFERRED COMPENSATION PLAN FOR NON–EMPLOYEE DIRECTORS

I. *Name and Purpose*

The name of this plan is the Ford Motor Company Deferred Compensation Plan for Non–Employee Directors (the "Plan"). Its purpose is to provide non-employee directors of Ford Motor Company (the "Company") with an opportunity to defer compensation earned as a director.

II. *Effective Date*

The Plan shall become effective on January 13, 1983.

III. *Participants*

Any director of the Company who is not an employee of the Company or of a subsidiary of the Company shall be eligible to participate in the Plan. Any such person who elects to participate in the Plan is hereinafter called a "Participant". The Plan shall establish for each Participant an unfunded deferred compensation account.

IV. *Election of Deferral*

(A) On or before December 31 of any year, each director, or nominee for election as a director, shall be entitled to make an irrevocable election to defer receipt of all or a specified portion of the compensation (exclusive of expense reimbursement) otherwise payable during the following year for service on the Board of Directors of the Company and its Committees and for attending meetings of the Board of Directors. With respect to the year 1983 only, directors may make an election before February 13, 1983, in which case such election shall apply to the

8. See, *In re Goff,* 706 F.2d 574, 587 (5th Cir. 1983).

Participant's compensation allocable to the period commencing March 1, 1983 and ending December 31, 1983. Such compensation shall be credited to the Participant's deferred compensation account on the date the compensation is otherwise payable.

(B) A newly-elected director may elect to participate in the Plan for the remainder of the calendar year in which such director joins the Board. Any such election shall be made within one month following the date on which such director is elected to the Board and shall be effective with respect to compensation allocable to the period commencing on the first day of the month next following the date on which such election is made.

(C) Each annual election shall include an irrevocable election as to the method by which the amounts deferred are to be distributed in accordance with Section VI below.

## V. *Deferred Compensation Accounts*

(A) A Participant's compensation shall be deferred in cash.

(B) All deferred compensation shall be held in the general funds of the Company and shall be credited to the Participant's deferred compensation account. Such account shall be credited with interest equivalents as of each June 30 and December 31 on the average daily balance credited to such account during the period of six months ended on such date, at an annual rate equal to (i) the rate, on a bond yield equivalency basis, on six-month (26–week) Treasury Bills maturing during the week in which such date falls, plus (ii) 75 basis points. Interest equivalents shall continue to be so credited until such time as the entire balance of such account shall have been distributed.

## VI. *Method of Distribution of Deferred Compensation*

(A) No distribution of deferred compensation may be made except as provided in this Section VI.

(B) The amount credited to a Participant's deferred compensation account for each year shall be payable in cash in a lump sum or in up to ten annual installments in, or commencing in, the year following the year in which the Participant's service as a director terminates. If annual installments are elected for any year, the amount of the first payment shall be a fraction of the amount of the Participant's deferred compensation account for such year as of December 31 of the year preceding payment, the numerator of which is one and the denominator of which is the total number of installments elected. The amount of each subsequent payment shall be a fraction of the amount as of December 31 of the year preceding each subsequent payment, the numerator of which is one and the denominator of which is the total number of installments elected minus the number of installments previously paid.

(C) Each distribution of deferred compensation, either in a lump sum or in annual installments, shall be made on January 10 of the year of distribution.

(D) At the written request of a Participant, the Office of the Chief Executive, in its sole discretion, may authorize the cessation of deferrals by such Participant under the Plan and distribution of all or a part of the Participant's account prior to his or her termination of service as a director, or accelerate payment of any installments, upon a showing of unforseeable emergency by the Participant. For purposes of this paragraph, unforseeable emergency is defined as severe financial hardship resulting from extraordinary and unforseeable circumstances arising as a result of one or more recent events beyond the control of the Participant. In any event, payment may not be made to the extent such emergency is or may be relieved: (1) through reimbursement or compensation by insurance or otherwise, (2) by liquidation of the Participant's assets, to the extent

the liquidation of such assets would not itself cause severe financial hardship, and (3) by cessation of deferrals under the Plan. Withdrawals of amounts because of an unforseeable emergency may only be permitted to the extent reasonably necessary to satisfy the emergency. Examples of what are not considered to be unforseeable emergencies include the need to send a Participant's child to college or the desire to purchase a home. The account will be credited with interest equivalents in accordance with the Plan up to the date of distribution.

## VII. *Manner of Electing Deferral*

A Participant may elect to defer compensation for each year while the Plan is in effect by giving written notice to the Company in accordance with the Plan setting forth the Participant's irrevocable election as to:

a) the percentage of each component of the Participant's compensation for such year (annual retainer, committee fees and attendance fees) to be deferred; and

b) the method of distribution desired for such year's compensation, i.e., in a lump sum payment or in a number of annual installments (not to exceed ten).

Such notice shall be delivered to the Company on or before December 31 of the year preceding the first year to which such election relates, except that notice with respect to the year 1983 may be delivered at any time prior to February 13, 1983 and notice from newly-elected directors may be delivered at any time within one month following the date of their election to the Board. The elections set forth in such notice shall be given continuing effect for subsequent years until a new notice specifying a different election shall be delivered to the Company. Any such new notice shall apply only to compensation for years subsequent to the year in which such new notice is delivered.

## VIII. *Distribution Upon Death*

If any Participant dies while a director, or thereafter, before receiving all funds deferred for his or her account, the unpaid amount in the Participant's account shall be paid in one lump sum on January 10 of the year following the year of death to any beneficiary or beneficiaries designated by the Participant by written notice to the Company or, in the absence of such designation, to such Participant's estate.

## IX. *Participant's Rights in Account*

A Participant shall not have any interest in the deferred compensation and interest equivalents credited to his or her account until it is distributed in accordance with the Plan. All amounts deferred under the Plan shall remain the sole property of the Company, subject to the claims of its general creditors and available for its use for whatever purposes are desired. With respect to amounts deferred, a Participant is merely a general creditor of the Company; and the obligation of the Company hereunder is purely contractual and shall not be funded or secured in any way.

## X. *Non-assignability*

The right of a Participant to the payment of deferred compensation as provided in the Plan shall not be assigned, transferred, pledged or encumbered or be subject in any manner to alienation or anticipation.

## XI. *Statement of Account*

Statements will be sent to Participants during February of each year as to the balance in their deferred compensation accounts as of the end of the previous calendar year.

## XII. *Administration*

The Administrator of this Plan shall be the Office of the Chief Executive of the Company. The Administrator shall have authority to adopt rules and regulations for carrying out the Plan and to

916

interpret, construe and implement the provisions thereof.

## XIII. *Amendment and Termination*

The Plan may at any time be amended, modified or terminated by the Board of Directors or the Executive Committee of the Company. No amendment, modification or termination shall, without the consent of a Participant, adversely affect such Participant's right with respect to amounts accrued in his or her deferred compensation account.

## XIV. *Notices*

All notices to the Company hereunder shall be delivered to the attention of the Secretary of the Company.