**FIRST REALTY BANK, Appellant,**

v.

**A. J. EHRLE, Individually; and d/b/a A. J.'s Equipment Sales and Service, Appellee.**

**No. 18546.**

Court of Civil Appeals of Texas, Dallas.

March 13, 1975.

Pat McDowell, Maloney, Milner & McDowell, Dallas, for appellant.

Charles Tobin, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

A. J. Ehrle, individually and d/b/a A. J.'s Equipment Sales and Service (hereinafter referred to as Ehrle) brought this action against Wynnewood State Bank, now known as First Realty Bank (hereinafter referred to as bank) seeking to recover damages allegedly caused by the bank when it improperly and unjustifiably interpleaded certain funds owned by Ehrle in a garnishment action. The bank, as garnishee, filed an answer in the garnishment action and also interpleaded Ehrle, as the third party defendant. The principal question is whether the bank was legally justified in bringing Ehrle into the garnishment

proceedings by interpleader and depositing a portion of his funds into the registry of the court. We hold that there was no evidence to show that the bank's interpleader and impoundment of appellee's funds was done unreasonably, improperly or without justification. We, therefore, reverse the judgment of the trial court in favor of Ehrle and here render judgment for the bank.

Proper resolution of the question presented requires a summary of the material evidence. On December 19, 1972, Caruthers Oil Company caused a writ of garnishment to issue against the bank based upon a judgment Caruthers had obtained in the district court of Denton County, Texas, against A. H. Jacobs Oil Company (hereinafter called Jacobs). The writ of garnishment commanded the bank to answer, under oath, the following:

(1) What, if anything, you are indebted to the above-named defendant and were when this writ was served upon you.

(2) What effects, if any, of the above-named defendant you had in your possession when this writ was served upon you.

(3) What other persons, if any, was in your knowledge indebted to the above-named defendant or have effects belonging to the above-named defendant in their possession.

In its answer to the writ, the bank stated it was not indebted to Jacobs and it did not have in its possession any effects of Jacobs. In answer to (3) above, the bank stated that there was a checking account in its bank styled "A.J.'s Equipment Sales and Service . . . which . . . may or may not be a person or entity indebted to the above defendant or having effects belonging to the above defendant [Jacobs] in its possession, and for such reasons, garnishee alleges that A.J.'s Equipment Sales and Service ought to be impleaded herein so that the various rights of the parties herein may be determined by the court." The bank then removed $2,500 from the account of Ehrle and tendered the same into the registry of the district court of Denton County accompanied by a "Motion to be Allowed to Implead Third Parties." Ehrle, as a third party defendant, then filed a cross-action against the bank, alleging that it had wrongfully impleaded its funds into court. When the cause was heard in the district court of Denton County, Ehrle moved for a non-suit on its cross-action against the bank and such motion was granted. The court then held that Ehrle was not and had not been indebted to Jacobs nor were there any effects held by Ehrle that was the property of Jacobs. The court decreed that, of Ehrle's $2,500 held in the registry of the court, Ehrle be paid $2,000 and the garnishee bank paid $500 for attorney fees. The court further ordered that the garnishor, Caruthers Oil Company, take nothing by its writ of garnishment and that the garnishee bank be discharged.

Ehrle, his non-suit having been granted, then brought suit in the district court of Dallas County against the bank alleging that the bank was without legal justification in paying $2,500 of his money into the Denton district court proceedings and bringing him into the lawsuit by interpleader. Ehrle alleged that he had been damaged in the amount of $2,000 by the loss of the use of the $2,500 in his business; in the amount of $500 as attorney fees which were paid from the funds impounded by the bank; in the amount of $781.70 for his wife's and his own personal time and expenses; and in the amount of $2,500 for exemplary and punitive damages. Following a trial before the court, without a jury, judgment was entered awarding Ehrle $1,500 against the bank. The trial court filed findings of fact and conclusions of law, the primary one being: "Interpleader action brought by the defendant [bank] was improper and without justification."

In its primary points of error, appellant bank contends that there was no evidence, or the evidence was insufficient, to support the trial court's finding and conclusion, that it acted improperly, unreasonably or without justification by impleading appellee's funds. We think that the record clearly demonstrates that appellant bank acted prudently, reasonably and with ample legal justification by taking the action it did during the pendency of the Denton County lawsuit.

Linda Wiggins, an officer in appellant's bank, testified that when she received the writ of garnishment on A. H. Jacobs Oil Company, Inc., she inspected the bank's records and determined that the account of Jacobs had been closed a short time prior thereto. She was familiar with the Jacobs account since another garnishment had been served upon the bank involving such account only two months earlier. In that suit, appellee Ehrle, or his wife, had executed a release on behalf of Jacobs in order to settle the litigation. Following such settlement, the Jacobs account was closed by Mrs. Ehrle. Mrs. Wiggins testified that her investigation of the bank's records reveal that a corporate resolution by Jacobs was on file with the bank and that it contained authorization for Mr. and Mrs. Ehrle to sign checks on the Jacobs account. She also found that there were some checks in the Ehrle's account which were payable to Jacobs. These checks had been endorsed by Ehrle and deposited in the Ehrle's account. She testified that the records of the bank reveal that the Ehrle business and the Jacobs business had the same business address and that the two companies had passed money back and forth to each other for some time. With this information, Mrs. Wiggins contacted the bank's attorney who advised her to place a "hold" on the Ehrle equipment account. In the interpleader action, the sum of $2,500 of Ehrle's money was deposited in the registry of the court but this did not amount to the total deposit of the appellee. During the months of October, November, December and January, the Ehrle account had exceeded the sum of $2,000 at all times and on several occasions exceeded $30,000.

Ehrle testified that Jacobs was his debtor; that he and his wife were authorized to endorse checks payable to Jacobs; that many checks were so endorsed and deposited in the Ehrle account; that he advised his wife to close the Jacobs account following the first garnishment suit; that he continued to receive Jacobs checks and endorse them for his company's deposit until early January 1973. He contended that he and his company merely had a factoring arrangement with Jacobs but he also admitted that he had taken no legal action to enforce his rights against Jacobs. He testified that the garnishee bank had no notice or knowledge of his relationship with Jacobs.

The question is thus squarely presented: What were the rights and responsibilities of the garnishee bank after it was served with the writ of garnishment in the light of the facts from the bank's records and personal dealings between appellee Ehrle and the judgment-debtor Jacobs were all considered? More specifically, was the garnishee bank justified in going further than merely filing an answer to the garnishment writ and bringing the appellee Ehrle into the garnishment action by interpleader and impoundment of funds? In resolving these questions, it must be remembered that the propriety of the bank's action must be judged by the facts existing at the time the writ was served upon the bank and prior to the time the Denton County district court rendered judgment in favor of appellee Ehrle.

Appellee argues that pursuant to Texas Rules of Civil Procedure, rule 666, without a controverting affidavit by the garnishor in response to the garnishee's answer, the impoundment of appellee's funds and interpleader was unnecessary to reasonably protect the bank from double liability. Thus appellee contends that the bank could have fully discharged its duty owed to the garnishor by merely filing an

answer denying that it was indebted to the judgment-debtor Jacobs. This argument presupposes that the garnishor would file no controverting affidavit. Rule 666 must be read and considered in connection with Rule 668 and Rule 673. Rule 673 provides that the garnishor may file an affidavit controverting the answer of the garnishee, thereby preventing the court from automatically discharging the garnishee as required by Rule 666. Rule 668 states:

> Should it appear from the answer of the garnishee or *should it* be otherwise made to appear and *be found by the court that the garnishee* is indebted to the defendant in any amount, or *was* so *indebted when the writ* of garnishment *was served,* the *court shall render judgment* for the plaintiff *against the garnishee* . . .. [Emphasis added]

This rule suggests that the liability, if any, of the garnishee becomes fixed at the time the writ of garnishment is served. "It is quite clear that a writ of garnishment . . . impound[s] the funds in the hands of the bank when the writ is served . . . ." First National Bank v. Banco Longoria, S.A., 356 S.W.2d 192, 195 (Tex. Civ.App.—San Antonio 1962, writ ref'd n. r. e.). Had the garnishor controverted the appellant-bank's answer to the writ of garnishment after the writ was served and had the Denton court determined that the bank was in fact indebted to the judgment-debtor Jacobs at the time the writ was served, then the bank would have been liable to pay over the amount of such debt under Rule 668. Without impoundment of funds and interpleading the appellee Ehrle, appellee could have, subsequent to the service of the writ on the bank but prior to judgment, withdrawn the funds, leaving the bank without means to reimburse itself for any amount adjudged against it in the garnishment action.

■ Was the bank restricted to the answer to the writ of garnishment prescribed by the rules? The Supreme Court in Davis v. East Texas Savings & Loan Ass'n, 163 Tex. 361, 354 S.W.2d 926 (1962) pointed out that a garnishee is not restricted or confined to the filing of the answer prescribed by the rules but, under certain circumstances and conditions, may file a bill of interpleader to protect its interest. The court said:

> An interpleader suit is authorized by Rule 43, Texas Rules of Civil Procedure, only when persons having claims against the plaintiff are such that he 'is or may be exposed to double or multiple liability.' The claims 'must be such as to place the stakeholder in some real doubt or hazard to entitle him to the remedy of interpleader' . . . and the doubt must at least be a reasonable one. (Cases cited therein)

In Nixon v. Malone, 100 Tex. 250, 98 S. W. 380 (1906), reh. denied, Nixon v. New York Life Insurance Co., 100 Tex. 250, 99 S.W. 403 (1907), the Supreme Court said that "any reasonable doubt as to his [stakeholder's or garnishee's] right to an interpleader will be resolved in his favor."

Under this rule we must determine whether the appellant-bank's fear of exposure to multiple liability was "reasonable" as required by Davis, *supra.* Upon traverse of the bank's answer by the garnishor, would there have been a reasonable possibility that the Denton court could have held that the bank was indebted to the judgment-debtor Jacobs at the time the writ was served? We hold that under this record such a possibility clearly existed, and consequently, the bank was entitled to protect itself by interpleader. The facts revealed by the bank's records show that the Jacobs account had been controlled by Mr. and Mrs. Ehrle; that the Ehrles were authorized to sign checks on the Jacobs account; that checks payable to Jacobs had been endorsed by Ehrle and deposited in Ehrle's account; that Jacobs's and Ehrle's business had the same address. These

facts were indeed sufficient to put the bank upon notice of the possibility that judgment-debtor Jacobs owned and had an interest in Ehrle's business. Another reasonable possibility was that Ehrle was acting as Jacob's agent in depositing in his own account checks payable to Jacobs. In any event, the garnishee-bank was possessed of facts, putting it on reasonable notice or inquiry that deposits in Ehrle's equipment company account might possibly have belonged to Jacobs and thus, the bank might have been liable to the garnishor, regardless of how the knowledge was acquired. First National Bank v. Wilson, 22 S.W.2d 546, 547 (Tex.Civ.App.—Eastland 1929, no writ) ; Magnolia Petroleum Co. v. Lockwood National Bank, 227 S.W. 363 (Tex.Civ.App.—San Antonio 1921, no writ). The Supreme Court, in Thompson v. Fulton Bag & Cotton Mills, 155 Tex. 365, 286 S.W.2d 411 (1956) said:

> The scope of the inquiry in a writ of garnishment is broad enough to impound funds of the debtor, held by the garnishee, even though title thereto stands nominally in a third person. Rule 661, Texas Rules of Civil Procedure.
> . . . [T]he manner in which title to funds held by the garnishee is put in issue is immaterial. It may be put in issue by the garnishor through traverse of the answer of the garnishee under Rule 673 . . . *or it may be put in issue by the answer of the garnishee* . . . .. In either event the garnishee may pay the funds into the court and by interpleader bring into the suit all other claimants thereto in order to protect itself against double liability. [Emphasis added]

In Pure Oil Co. v. Walsh-Woldert Motor Co., 36 S.W.2d 802 (Tex.Civ.App.—Texarkana 1931, writ dism'd), the court held that the garnishee was liable where, after the service of the writ, garnishee paid the garnishment-debtor under the mistaken belief that the debtor was a different person than the person named in the writ. The court said that the garnishee is liable if "by the exercise of ordinary care and diligence," it could have known that the garnishment-debtor and the person to whom the garnishee made the payment were one and the same person.

We hold that the garnishee-bank could reasonably have feared exposure to double liability for the funds in the appellee's account and that the bank was therefore justified in interpleading the appellee and paying his funds into the registry of the court pending adjudication of the rights of the garnishor and the appellee to these funds. The good faith of appellant-bank is emphasized by the fact that it impounded a relatively small percentage of the total account of appellee Ehrle thus minimizing the extent of any possible damage resulting from the interpleader. We hold that the trial court's finding and conclusion that appellant-bank acted improperly and without justification in filing the bill of interpleader is without support of the evidence and, therefore, the judgment based upon such conclusion must be reversed. Our disposition of the case renders it unnecessary that we discuss or pass upon the other points presented by appellant.

The judgment of the trial court is reversed and here rendered that A. J. Ehrle, individually, and d/b/a A. J.'s Equipment Sales and Service, do have and recover nothing from First Realty Bank, that all costs herein be assessed against appellee Ehrle.

Reversed and rendered.