Shearn MOODY, Jr., et al., Appellants,

v.

STATE of Texas, Appellee.

No. 5505.

Court of Civil Appeals of Texas, Waco.

May 13, 1976.

Rehearing Denied June 10, 1976.

Newman, Shook & Newman, Frank G. Newman, Dallas, for appellants.

A. R. Schwartz, Galveston, for appellee.

HALL, Justice.

The substantive issue on this appeal is whether the trial court erred after a non-jury hearing in authorizing the ancillary receiver (in Texas) of Empire Life Insurance Company of America to cooperate in the consummation of a reinsurance contract between Empire's principal receiver (in Alabama) and Protective Life Insurance Company, an Alabama Corporation. We affirm the order.

There has been much related litigation in the courts of Texas and Alabama. Some is reported in *Day v. State,* 489 S.W.2d 368 (Tex.Civ.App.—Austin, 1973, writ ref., n. r. e.); *Empire Life Insurance Company of America v. State,* 492 S.W.2d 366 (Tex.Civ. App.—Austin, 1973, no writ hist.); *Moody v. Jones,* 519 S.W.2d 536 (Tex.Civ.App.— Austin, 1975, no writ hist.); *Moody v. State,* 520 S.W.2d 452 (Tex.Civ.App.—Austin, 1975, no writ hist.); *Moody v. Crook,* 520 S.W.2d 958 (Tex.Civ.App.—Austin, 1975, no writ hist.); and *Moody v. Moody National Bank of Galveston,* 522 S.W.2d 710 (Tex. Civ.App.—Hou. 14th, 1975, writ ref., n. r. e.).

Empire Life Insurance Company of America (hereinafter "Empire") is an Alabama corporation. Because of mergers with Texas companies, at least one-half of its policyholders are Texas residents. In June, 1972, Empire was found by the courts of Alabama to be insolvent, and was placed in receivership. Immediately thereafter, an ancillary receiver was appointed by the courts of Texas. Substantially all of Empire's physical assets are located in Texas. A major asset is an interest in the Libbie Shearn Moody Trust, which is administered by the Moody National Bank of Galveston, Texas. This interest was assigned to Empire by Shearn Moody, Jr. ("Moody"), an appellant here, who is the beneficiary of a lifetime income under the Trust. The other appellant, John Shearn Bleker, is Moody's cousin. He owns 300 shares of Empire stock and holds a $5,000 paid-up Empire life insurance policy. Protective Life Insurance Company is an old-line, conservative company with over $25,000,000 in capital and surplus, and with an excellent reputation. Its home office is in Birmingham.

As a result of Empire's insolvency, and after unsuccessful attempts to "rehabilitate" Empire, the States of Alabama, Texas, Arkansas, Montana, Nebraska, and Oklahoma suspended Empire's operations there and proceeded with plans for reinsuring the outstanding Empire insurance policies. On June 14, 1974, the reinsurance plan in question was approved by the Circuit Court for the Tenth Judicial District of Alabama, upon the application of the domiciliary receiver. On February 26, 1975, the order challenged on this appeal was rendered authorizing the Texas ancillary receiver to consummate the reinsurance agreement.

The appellants assert a number of reasons why they say the agreement establishes unlawful discriminatory preferences among Empire's policyholders and creditors. We overrule these contentions.

The agreement is lengthy. The testimony relating to its fairness *vel non* is voluminous. We need not detail either. The appellants' argument is erroneously based upon the premise that all Empire policies are alike and must therefore be treated identically in the reinsurance contract. The record shows that the policyholders come from many different companies with many

different plans and policies, and it supports the determination that treating the different policyholders identically in the reinsurance plan and ignoring the various policy distinctions would result in unfair discrimination. Rather, the agreement identifies each unusual or unique group and treats it with special provisions formulated to produce equitable benefits for all. It is axiomatic that a different classification and treatment of persons based on real and substantial differences between them is not per se unlawful discrimination. See 12 Tex. Jur.2d 458, Constitutional Law, § 111. Such different treatment is often necessary, as it is here, to *avoid* unlawful discrimination.

The contract in question provides in meticulous detail how the disparate groups of Empire's policyholders shall be treated. The proof shows it to be much more detailed and carefully thought out than any other reinsurance bid received by the receiver. It guarantees the payment of all death benefits under all of the policies. However, the record shows that Empire's assets are worth millions of dollars less than the reserve liabilities of the policies Protective assumes under the plan; that Empire is in fact impaired in excess of $10 million and is insolvent in excess of $6 million. To off-set this multi-million dollar gap the reinsurance agreement places a ten-year limitation called a "moratorium" of 35% on all cash benefits that can be exercised voluntarily by the policyholders. In other words, the moratorium reduces the reserves by limiting the amount of cash the policyholders may voluntarily withdraw under the terms of their policies. However, full policy benefits by the time of ending the moratorium are guaranteed by Protective to all accepting policyholders. Under the reinsurance contract, Protective receives no profits until the moratorium has been completely eliminated.

Obviously, policyholders who accept reinsurance and the eventual restoration of all policy benefits which come with it are treated differently from those who reject. But every policyholder has this choice and makes it voluntarily. At any given point in time all policyholders are treated precisely the same in relation to the moratorium. Different treatment as a result of a voluntary election can hardly be classified as arbitrary or unfair discrimination. In any event, the plan provides that Protective will transfer to the receiver assets equal in value to the reserve liability for every policy of every rejecting policyholder less the moratorium amount on each such policy. The Receiver can then pay this amount to the rejecting policyholder. This payment approximates the initial value of the agreement to policyholders who accept reinsurance, and thus produces equal treatment of accepting and rejecting policyholders as closely as it can be done.

In addition to the terms we have cited for payment of claims of rejecting policyholders, the agreement provides for the receiver to retain an additional $2 million for payment of the claims of other creditors which have not been assumed by Protective. Under the testimony, this fund is sufficient to treat all such claims equitably. There is no discrimination.

The appellants claim a violation of constitutional due process because the policyholders were not given notice of the hearing below. The appellants had notice of the hearing and participated in it. Accordingly, they have not suffered from the alleged unconstitutional act they assert, but are simply assuming to champion an alleged wrong of others. The general rule in constitutional litigation, applicable here, is that one may not assert the rights of third parties. *Corey v. City of Dallas,* 492 F.2d 496, 497 (5th Cir. 1974). The appellants have no standing to raise the point in question. *Armenta v. Nussbaum,* 519 S.W.2d 673, 679 (Tex.Civ.App.—Corpus Christi, 1975, writ ref'd, n. r. e.).

Moody made a written demand and fee deposit for a jury. He contends the order in question must be set aside because he was not accorded a jury trial. We disagree. The problem facing the court below was one of proper management and control of the assets of a receivership. It turned

specifically on whether the proposed reinsurance agreement recommended by the Texas Receiver, an officer of the court appointed by the court, would serve the best interests of the Empire policyholders. Property held by a receiver is in *custodia legis.* It is the settled rule that questions concerning the management and control of such property are addressed to the sound discretion of the court without the interposition of a jury. *McHenry v. Bankers' Trust Co.,* 206 S.W. 560, 572 (Tex.Civ.App.—Galveston, 1918, writ ref.); *Ferguson v. Ferguson,* 210 S.W.2d 268, 269 (Tex.Civ.App.—Austin, 1948, writ ref., n. r. e.), certiorari denied, 337 U.S. 943, 69 S.Ct. 1498, 93 L.Ed. 1747 (1949), rehearing denied, 338 U.S. 853, 70 S.Ct. 81, 94 L.Ed. 523 (1949), rehearing denied 339 U.S. 916, 70 S.Ct. 559, 94 L.Ed. 1341 (1950).

The record does not show an abuse of discretion. The appellants' points and contentions are overruled. The judgment is affirmed.