Tom DANIELS, Appellant,

v.

PECAN VALLEY RANCH, INC. & the Equitable Life Assurance Society of the United States, Appellees.

No. 04–91–00320–CV.

Court of Appeals of Texas, San Antonio.

April 29, 1992.

Rehearing Denied June 18, 1992.

Ricky Poole, Les Mendelsohn, Speiser, Krause, Madole & Mendelsohn, Mata, San Antonio, for appellant.

Judith R. Blakeway, Matthews & Branscomb, San Antonio, Wm. Michael Childers, Kerrville, for appellees.

Before PEEPLES, BIERY and CARR, JJ.

## OPINION

BIERY, Justice.

This appeal presents a question not yet addressed by the state courts of Texas: whether a personal injury structured settlement annuity is subject to the claims of the injured party's judgment creditors. While there may be sound public policy arguments for the legislature to require benefits payable from a structured settlement to be at least partially exempt from garnishment, neither the Texas Legislature nor the United States Congress has chosen to do so. We hold we have no authority to create a common-law exemption.

A chronology of events proves helpful:

November 11, 1985:

Tom Daniels ("Daniels") enters into a structured settlement annuity (the "annuity") in partial settlement for personal injuries sustained at work. The annuity, owned by Travelers Indemnity Company and issued by the Equitable Life Assurance Company of the United States ("Eq-

uitable"), provides for monthly payments of $1,000 to Daniels for life on the 16th of each month and for lump sum payments of $50,000 on November 16, 1990, $75,000 on November 16, 1995, and $100,-000 on November 16, 2000.

October 1, 1990:

Pecan Valley Ranch, Inc. ("Pecan Valley") obtains a deficiency judgment against Daniels in Cause No. 89–177–B styled *Pecan Valley Ranch, Inc. v. Tom Daniels* entered by the 198th Judicial District Court in Kerr County, Texas. The judgment is in the amount of $57,-934.00, plus interest. The deficiency judgment was not appealed by Daniels and is now final.

October 4, 1990:

Pecan Valley files an application for writ of garnishment in Cause No. 90–585–B, styled *Pecan Valley Ranch, Inc. v. The Equitable Life Assurance Society of the United States, Garnishee and Tom Daniels, Debtor and Original Defendant,* to garnish any debts owed by Equitable to Daniels and to obtain any effects of Daniels which Equitable had in its possession.

October 9, 1990:

Equitable receives the writ of garnishment from the Kerr County District Court.

November 11, 1990:

Equitable stops payment on the $51,000 check it mailed pursuant to the annuity.

November 15, 1990:

Daniels receives the $51,000 check, cashes it in part, and deposits the remainder for collection at his bank, which subsequently dishonors the check pursuant to the stop payment order.

November 15, 1990:

Equitable answers the garnishee's summons.

November 16, 1990:

Daniels files his motion to quash service and writ of garnishment in Cause No. 90–585–B.

November 30, 1990:

Hearing on Daniels' motion to quash service and writ of garnishment. The court denies both requests and enters judgment in favor of Pecan Valley.

December 3, 1990:

Daniels files suit against Equitable in Cause No. 90–CI–17120 in the 57th Judicial District Court for Bexar County, Texas in a case styled *Tom Daniels v. The Equitable Life Assurance Society of the United States.* Daniels sues Equitable for stopping payment on the $51,-000 check, seeking actual and exemplary damages for intentional and negligent infliction of emotional distress, breach of the annuity contract, and breach of its duty of good faith and fair dealing. Daniels also seeks an injunction ordering Equitable to honor the $51,000 check.

December 3, 1990:

Daniels obtains an ex parte temporary restraining order issued in the Bexar County action ordering Equitable to release its stop payment order on the $51,-000 check payable to Daniels.

December 11, 1990:

Equitable files a plea in abatement and original answer asking the Bexar County action be dismissed due to the prior pending action involving the same controversy and parties in Kerr County.

December 14, 1990:

Daniels files a motion for new trial in the Kerr County action seeking reconsideration of the court's November 30, 1990 judgment.

December 18, 1990:

Bexar County court denies Equitable's plea in abatement and enters a temporary injunction in Cause No. 90–CI–17120 in Bexar County ordering Equitable to release the stop payment and pay Daniels $51,000.

December 18, 1990:

Kerr County court grants Daniels a new trial in Cause No. 90–585–B setting aside the November 30, 1990 judgment in favor of Pecan Valley. The order conditions the new trial upon Equitable's depositing the annuity funds in dispute into the registry of the Kerr County court.

Equitable is now subject to two conflicting court orders, from courts of coordinate jurisdiction, entered on the same day.

December 19, 1990:

On Daniels' motion, the Kerr County court grants a continuance and sets the trial on the merits for January 4, 1991 in Cause No. 90–585–B. Pecan Valley files its supplemental application for writ of garnishment and second writ of garnishment directed to Equitable and issued by the Kerr County District Court.

December 20, 1990:

Equitable removes the Bexar County action, Cause No. 90–CI–17120, to federal court. Equitable files a motion to vacate the temporary injunction and stay the action or in the alternative to allow interpleader in the federal court.

December 26, 1990:

Equitable files a petition in interpleader in the Kerrville action, Cause No. 90–585–B.

January 4, 1991:

Daniels files a motion to dissolve writ of garnishment or, alternatively plea in abatement in the Kerr County action, Cause No. 90–585–B. At Daniels' request, the trial on the merits is postponed until after the federal court's ruling on Equitable's motion to vacate or stay.

January 10, 1991:

Federal court enters an order vacating the Bexar County temporary injunction entered on December 18, 1990 and staying further proceedings pending final disposition of the action currently pending in Kerr County, Texas in Cause No. 90–585–B, styled *Pecan Valley Ranch, Inc., Garnishor v. Equitable Life Assurance Society of the United States, Garnishee, and Tom Daniels, Debtor.*

January 11, 1991:

Equitable is served with a second writ of garnishment in the Kerr County action, Cause No. 90–585–B.

January 18, 1991:

Cause No. 90–585–B is set for trial on the merits in Kerrville for February 25, 1991.

January 22, 1991:

Pecan Valley files its Application for Turnover Relief and attorney's fees.

February 4, 1991:

Equitable files its Answer to Writ of Garnishment and Interpleader and deposits $53,000—the fund in dispute—into the registry of Kerr County court pursuant to the court's order dated December 18, 1990.

February 7, 1991:

Daniels files his motion to dissolve writ of garnishment in Cause No. 90–585–B.

February 13, 1991:

Pecan Valley files its supplemental application for turnover relief and attorney's fees.

February 25, 1991:

Bench trial on the merits held in Kerrville.

March 13, 1991:

Judgment entered in Cause No. 90–585–B in favor of Pecan Valley and Equitable and against Tom Daniels.

April 22, 1991:

In Findings of Fact and Conclusions of Law, the trial court finds the annuity policy issued to Daniels is not exempt from attachment under state or federal law, as a spendthrift trust or as policy of insurance. The court finds that attachment in the form of the writ of garnishment and/or the application for turnover relief is effective against the structured settlement annuity fund, including payments held in the registry of the Kerr County District Court, as well as Daniels' future annuity payments. The court awards $3,500 attorney's fees to Pecan Valley for the turnover proceeding and $25,000 attorney's fees to Equitable for the garnishment, interpleader and Bexar County actions.

Daniels presents seventeen (17) points of procedural and substantive error. This Court must first determine whether the annuity fund was subject to garnishment as a matter of substantive law before a review of the trial court's alleged procedural errors need be addressed. We will begin, therefore, reviewing of points of error seven through fourteen in which Daniels contends the trial court erred in holding the annuity was subject to garnishment.

■ In points of error seven and eight, Daniels contends the evidence does not support the ruling the annuity policy is not exempt from attachment under state and federal law. In the absence of Texas case law or statutory authority to support his argument, Daniels contends public policy requires benefits payable from a structured settlement annuity be exempt from garnishment. Citing tax legislation hearings regarding provisions of the Internal Revenue Code exempting settlement annuities from income taxes, Daniels maintains testimony in congressional hearings that injured plaintiffs may squander their settlement proceeds and become societal charges indicates Congress intended for these funds to be exempt from creditors. *Miscellaneous Tax Legislation, 1982: H.R.Rep. No. 5470 Before the Subcomm. on Select Revenue Measures of the House Comm. on Ways and Means*, 97th Cong., 2d Sess. 4–93 (1982).

There is nothing in the federal statutory law which exempts a settlement annuity from attachment by creditors under state law. If Congress had intended to exempt settlement annuities beyond those tax exemptions stated in the Internal Revenue Code, it was capable of stating this, as the Texas Legislature did for example, in the case of qualified pension plans in section 42.0021 of the Texas Property Code. This is especially true if, as Daniels' contends, Congress considered testimony that injured plaintiffs sometimes squander their settlement proceeds and become societal charges, yet chose specifically not to exempt these funds from attachment by creditors.

Bankruptcy courts have consistently held that structured tort settlement annuities are not exempt from attachment. *In re Johnson*, 108 B.R. 240, 242 (Bankr.D.N.D. 1989) (legislature intended for annuities in

context of retirement instruments to be exempt, but not annuities based upon tort settlement); *In re Simon*, 71 B.R. 65, 66–67 (Bankr.N.D.Ohio 1987) (annuity in settlement of tort suit not contemplated by drafters of tax legislation). Additionally, the Fifth Circuit has held a structured tort settlement is more in the nature of an "account receivable" than an annuity as contemplated by the Florida exemption statute. *In re Young*, 806 F.2d 1303, 1307 (5th Cir.1987). We hold payments made pursuant to the annuity contract issued by Equitable to Daniels are not exempt from garnishment under state or federal law. Points of error seven and eight are overruled.

■ In points of error nine and ten, Daniels contends the trial court erred in failing to dissolve the writ of garnishment and in entering judgment in favor of Pecan Valley because there is no evidence or insufficient evidence to support trial court's finding the annuity does not contain spendthrift trust provisions which exempt the annuity proceeds from attachment.[1] Specifically, Daniels argues the following language contained in the annuity creates a spendthrift trust:

> It is the intent of the parties to this agreement to comply with the applicable requirements of §§ 104(a)(2) and 130(c)(2)(A) through (E) of the Internal Revenue Code. In order to assure that all payments due to Thomas Daniels under the settlement agreement are not subject to the federal income tax, Thomas Daniels shall not have the right under this agreement to accelerate, defer, increase or decrease any of the payments due him.

The provision itself states this language is contained in the annuity to assure that Daniels does not have to pay federal income tax on the payments, not to exempt the funds from creditors' claims. Additionally, the record reflects the document in issue is called an annuity, not a trust. It does not name a trustee; it refers to Daniels as the "annuitant" and not the beneficiary.

■ Even were this court to consider only the anti-alienation language in the annuity, no spendthrift trust is created. In Texas, a settlor cannot create a spendthrift trust for his own benefit and have the trust insulated from the rights of creditors. Such an instrument is "self-settled" and, therefore, invalid. See Tex.Prop.Code Ann. § 112.035(d) (Vernon 1984); *see also First Bank & Trust v. Goss*, 533 S.W.2d 93, 95 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 534 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). Daniels argues there is no evidence he was the "moving force" behind the annuity and, in the absence of this evidence, the alleged trust cannot be self-settled. The record reflects, however, Daniels was the person who elected to settle the lawsuit and to purchase the settlement annuity as opposed to receiving a lump sum amount. These actions created the document in issue, providing Daniels with settlor status under Texas trust law. Because Daniels helped create the annuity relationship, and made himself beneficiary, the purported trust is self-settled and cannot protect Daniels from liability for debts. *Goss*, 533 S.W.2d at 95; *Glass*, 330 S.W.2d at 534.

Additionally, Daniels' own expert testified that a person electing to settle a lawsuit by accepting an annuity creates a self-settled trust. He further said Daniels could not have taken the settlement proceeds from his lawsuit and put them in a trust for himself and thereby escape creditors' claims.

1. In considering a no evidence point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex. 1989); *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

At least one Texas bankruptcy court has held, as a matter of law, structured deferred compensation annuities are self-settled, and thus not exempt from attachment. In *In re Connally*, 94 B.R. 908, 909 (Bankr.W.D.Tex.1989), John Connally claimed that the $76,000 he received as deferred compensation as director's fees from Ford Motor Company was exempt pursuant to § 42.002 of the Texas Property Code. The deferred compensation plan provided that a participant would not have any interest in the deferred compensation until it was distributed and, with respect to amounts deferred, a participant was merely a general creditor of the company. *Id.* at 909–10. Connally argued the fund was in the nature of a spendthrift trust. *Id.* at 911. The bankruptcy court rejected this argument, holding Connally's interest was a contractual right, making him a creditor of Ford and not the beneficiary of a trust. Further, if a spendthrift trust was established by the deferred compensation plan, it was self-settled and, therefore, not exempt from creditors. *Id.*

Daniels argues that *Connally* is distinguishable since the directors in that case could elect to defer compensation until termination or retirement. *Id.* at 911. Daniels, however, has no right to accelerate any annuity payment, and has no ownership rights to the annuity funds until they become due and owing to him. According to Daniels, *Connally* suggests the deferred compensation plan would have constituted a spendthrift trust had the funds not been within the control of the directors. Daniels does not explain, nor can this Court determine, how lack of control over the funds establishes that the trust is not self-settled.

█ Although no particular form of words is required for creation of a spendthrift trust, the trustee must have a duty to preserve the trust funds. A trustee who has no duty except to make payments as they become due is the trustee of a "passive" or "dry" trust. Under Texas law, a merely passive trust cannot constitute a valid spendthrift trust because the beneficiary is considered the real owner of the

property. *Long v. Long,* 252 S.W.2d 235, 246–47 (Tex.Civ.App.—Texarkana 1952, writ ref'd n.r.e.).

In this case, the record reflects Equitable had no duty to Daniels except to make the payments to Daniels as they became due. Equitable had no duty to preserve the premiums and could invest them as it saw fit. If a trust was created at all, it was dry or passive and, as such, not a valid spendthrift trust.

The specific question of whether a structured settlement agreement creates a valid spendthrift trust was considered by the court in *In re Jordan,* 914 F.2d 197, 198 (9th Cir.1990). Jordan was injured in an on-the-job accident while employed as a signal maintainer by Burlington Northern Railroad. He entered into a structured settlement agreement under the terms of which Burlington Northern Railroad agreed to purchase an annuity. The structured settlement agreement stated: "no amount payable or to become payable under the terms of this agreement shall be subject to anticipation or assignment ... or ... attachment by ... any creditor." *Id.* Jordan argued the annuity was exempt as a spendthrift trust. The circuit court rejected this contention, holding Jordan was the settlor of the trust because the money placed in the fund was directly traceable to Jordan's property interest in his cause of action. *Id.* at 198–99.

Here, Daniels argues Texas recognized a public policy exception to the general rule that a self-settled trust is not exempt from creditors in *Booth v. Chadwick,* 154 S.W.2d 268, 274 (Tex.Civ.App.—Galveston 1941, writ ref'd w.o.m.). A prisoner serving a life sentence conveyed all his property in trust to a relative. He then conveyed half of this property by deed to Booth. Later, he and his trustee sued Booth to cancel the conveyance. The jury found the deed was procured by fraud. *Id.* at 269–70. On appeal, the court overruled all of the appellant's points of error and, thus, found it unnecessary to reach appellee's contentions for affirmance of the case. *Id.* at 271–74. In dicta, however, the court restated the general rule that it is against public policy

to permit a man to manipulate his property in such a way that he can still enjoy it, but prevent his creditors from reaching it. *Id.* at 274. The court went on to state there might be an exception to this rule if a person were in prison serving a life sentence. *Id.* Even were this court to recognize such an exception, it would not apply to these facts because Daniels is not in prison serving a life sentence or operating under similar circumstances which would alter the general rule. We hold the record supports the trial court's conclusion that payments made pursuant to the annuity contract issued by Equitable are not exempt from garnishment as a spendthrift trust. Points of error nine and ten are overruled.

■ In points of error eleven and twelve, Daniels contends the evidence does not support the trial court's ruling the settlement annuity is not a policy of life insurance exempt under article 21.22 of the Texas Insurance Code.[2] He argues the fact the annuity was issued by an insurance company makes it an insurance policy. Insurance companies, however, sell many types of products. A contract is not necessarily an insurance policy simply because a life insurance company issued it. *In re Howerton*, 21 B.R. 621, 623 (Bankr.N.D.Tex.1982) (life insurance constitutes promise to pay sum certain on death of insured while annuity is form of investment paying periodically during life of annuitant or during term fixed by contract rather than on occurrence of future contingency).

This court has expressly held an annuity contract is not an insurance policy. *Steves & Sons, Inc. v. House of Doors, Inc.*, 749 S.W.2d 172, 176 (Tex.App.—San Antonio 1988, writ denied). There, the judgment creditor garnished cash proceeds and accrued interest deposited to an individual retirement annuity contract issued by the life insurance company to the judgment debtor. *Id.* at 174. The trial court held the property was exempt. Citing *Daniel v. Life Ins. Co. of Virginia*, 102 S.W.2d 256, 260 (Tex.Civ.App.—Austin 1937, no writ) this court reversed and stated:

> [an] annuity contract is an investment made primarily for the benefit of the annuitant, while a life insurance policy is primarily for the benefit of a third person (beneficiary). Rather than a death benefit paid to the beneficiary upon the death of the insured, the annuity contract provides for a series of monthly insurance payments to be paid to the annuitant for the remainder of his life....

*Id.* at 175–76. Thus, an annuity is not exempt as a life insurance policy under article 21.22 of the Texas Insurance Code. *See also In re Powers*, 112 B.R. 178, 181 (Bankr.S.D.Tex.1989) (Texas statute exempting from execution, attachment or garnishment benefits paid to insured or beneficiary under policy issued by life, health or accident insurance company did not apply to insurance proceeds resulting from settlement of personal injury claim); *In re Brothers*, 94 B.R. 82, 85 (Bankr.N.D.Tex.1988) (Article 21.22 of Texas Insurance Code does not apply to cash surrender values because such funds are not payments made under an insurance policy; payments made under insurance policy are those made on occurrence of future contin-

---

2. **Art. 21.22. Unlimited Exemption of Insurance Benefits From Seizure Under Process**

Sec. 1. Notwithstanding any provision of this code other than this article, all money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer, shall:

....

(2) be fully exempt from execution, attachment, garnishment or other process;

(3) be fully exempt from being seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of the insured or of any beneficiary, either before or after said money or benefits is or are paid or rendered; ...

TEX.REV.CIV.STAT.ANN. art. 21.22 (Vernon Supp. 1991). Although article 21.22 exempts "annuities," it is in the context of a "plan or program of annuities and benefits in use by an employer." Daniels does not contend the settlement annuity fund is an "annuity" as contemplated by Article 21.22.

gency for which insured and insurance carrier have contracted); *Union Sav. Bldg. & Loan Ass'n v. Smith,* 62 S.W.2d 175, 176 (Tex.Civ.App.—Texarkana 1933, writ ref'd n.r.e.) (proceeds of life policy payable to beneficiary at one time in gross sum are non-exempt from garnishment for debt of beneficiary). Points of error eleven and twelve are overruled.

■ In points of error thirteen and fourteen, Daniels asserts the trial court erred in concluding the annuity contract issued by Equitable to Daniels created a debtor/creditor relationship between Equitable and Daniels. The evidence supporting the trial court's finding is contained in the annuity itself, which expressly states:

> The named payee of said annuity contract [Daniels] shall have no greater rights than Equitable Life Assurance Society of the United States than those of a general creditor in the event of default on any annuity payment ... Nothing herein shall elevate Tom Daniels above general creditor status.

■ Daniels next argues that debtor/creditor status is immaterial in interpreting the exemption status of the annuity. Such is not the case. A debtor/creditor relationship is inconsistent with the fiduciary duty necessary to create a trust. The subject annuity contract merely represents installment payments on the underlying debt between Daniels and the insurer by way of the settlement agreement. *In re Johnson,* 108 B.R. 240, 243 (Bankr.D.N.D. 1989). We find there is sufficient evidence to support the trial court's finding the annuity policy is not exempt from attachment as a policy of insurance under article 21.22 of the Texas Insurance Code. Points of error thirteen and fourteen are overruled.

Because we affirm the trial court's finding the annuity is not exempt from the claims of the judgment creditor Pecan Valley by public policy, as a spendthrift trust, or as a policy of insurance under article 21.22 of the Texas Insurance Code, it is necessary to address points of error one through six, which complain of certain procedural rulings made by the trial court. In point of error number one, Daniels contends the trial court abused its discretion by conditioning the grant of new trial on Equitable's deposit of the annuity funds into the registry of the court. He argues the grant of a new trial and the dissolution of the writ of garnishment in the same order conclusively adjudicated the garnishment issue; without continuing jurisdiction, Daniels was entitled to the funds.

To support this proposition, Daniels relies upon cases in which the defendant, or an intervenor, moved the court to quash, dissolve or modify a writ of garnishment by challenging the statutory authority relied upon by the garnishor for issuance of the writ of garnishment. In each case, the motion was heard and an order dissolving the writ of garnishment was issued unless the garnishor proved the ground relied upon for its issuance. Under the current statutory scheme, such motions are governed by Rule 664a of the Texas Rules of Civil Procedure. Texas courts have determined an order dissolving the writ under these circumstances conclusively adjudicates the garnishment proceedings and the property must be released. *A. Wolfson's Inc. v. First State Bank,* 752 S.W.2d 614, 616 (Tex.App.—Corpus Christi 1988, writ denied); *Proctor v. Assocs. Inv. Co.,* 257 S.W.2d 324, 326 (Tex.Civ.App.—Galveston 1953, no writ); *Roberts v. Stoneham,* 31 S.W.2d 856, 857 (Tex.Civ.App.—Austin 1930, no writ).

Here, however, Daniels did not challenge Pecan Valley's statutory authority to secure the writ, thereby invoking Rule 664a. Rather, he filed a Motion To Quash Service Of Process and Writ Of Garnishment contending that service of process upon the defendant was defective pursuant to Rule 663a. He also moved the court to quash the writ on the ground the annuity fund was exempt from garnishment as an insurance policy and spendthrift trust. The trial court heard and denied the motion. Daniels then filed his Motion for New Trial, pursuant to Rule 320 of the Texas Rules of Civil Procedure, requesting the court to reconsider its decision. On appeal, he complains the court granted his motion for new trial, but conditioned it upon the deposit of

the annuity funds into the registry of the court. Because Daniels does not attack a decision made pursuant to a Rule 664a motion, cases interpreting the effect of such an order are not applicable to Daniels' motion for new trial under Rule 320.

Additionally, we are persuaded the trial court had authority to condition the grant of new trial upon deposit of the funds into the registry of the court. In Texas, a court has discretion to condition its grant of new trial. *See Equitable Gen. Ins. Co. v. Yates,* 684 S.W.2d 669, 671 (Tex.1984). This the trial court did when stating "the new trial will only be granted under the condition and with the stipulation or agreement that the $51,000 be held in escrow" and further ordered that "the Equitable Life Assurance Society of the United States deposit the funds impounded by the Writ of Garnishment with the Clerk of this Court."

As a general rule, one cannot complain of errors which he has invited. Specifically, a litigant cannot ask something of the trial court and then complain on appeal the trial court gave it to him. *Northeast Motor Lines, Inc. v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942); *Dolenz v. American Gen. Fire & Casualty Co.,* 798 S.W.2d 862, 863 (Tex.App.—Dallas 1990, writ denied); *Flores v. Texas Employer's Ins. Ass'n,* 515 S.W.2d 938, 940 (Tex.Civ.App.—El Paso 1974, no writ). Daniels requested the trial court to grant him a new trial. He cannot urge on appeal the trial court erred in granting his motion for new trial, when part of the relief was granted at his request, and the trial judge had authority to condition the new trial upon the deposit of funds into the registry of the court. Point of error number one is overruled.

By point of error number two, Daniels argues the funds could not be attached by the supplemental writ of garnishment because, by virtue of the court's order requiring Equitable to deposit the funds into the registry of the court, the funds were *in custodia legis* and exempt from attachment. It is well established under Texas law that property held in the custody of the law, or *in custodia legis,* cannot be garnished. *Pace v. Smith,* 57 Tex. 555, 558 (1882); *Southwestern Bell Telephone Co. v. Watson,* 413 S.W.2d 846, 848 (Tex.Civ.App.—Corpus Christi 1967, no writ). Generally, *in custodia legis* applies to property held by court officials. While the majority of the case law pertains to property held by the clerk of the court, the Texas Supreme Court has held the principle also applies to property held by other officers of the court, including receivers, assignees in bankruptcy, disbursing officers, sheriffs, executors, administrators and guardians. *Pace,* 57 Tex. at 558. A Texas bankruptcy court extended this holding to include property held in a fiduciary capacity by a trustee. *In re Reed,* 89 B.R. 603, 607–08 (Bankr.N.D.Tex.1988). The principle underlying this doctrine is that "no person deriving his authority from the law, and obligated to execute it according to the rules of law, can be holden by process of this kind." *Pace,* 57 Tex. at 558. Upon service of a writ of garnishment, a person with proper authority may deny the indebtedness to the garnishor and specifically assert the funds are held *in custodia legis* pending orders of the court. *Houston Drywall, Inc. v. Construction Sys., Inc.,* 541 S.W.2d 220, 221 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). All of the *in custodia legis* cases involve court officials or fiduciaries.[3] In this case, however, Eq-

---

**3.** *First S. Properties, Inc. v. Vallone,* 533 S.W.2d 339, 342–43 (Tex.1976); *Farm & Home Sav. Ass'n v. Breeding,* 131 Tex. 518, 115 S.W.2d 615, 616 (1938); *Cocke v. Wright,* 39 S.W.2d 590, 592 (Tex.Comm'n App.1931, judgm't adopted); *Turner v. Gibson,* 105 Tex. 488, 151 S.W. 793, 794 (1912); *Curtis v. Ford,* 78 Tex. 266, 14 S.W. 614, 615 (1890); *Leroux v. Baldus,* 13 S.W. 1019, 1020 (Tex.1890); *Heye v. Moody,* 67 Tex. 615, 4 S.W. 242, 243 (1887); *Pace,* 57 Tex. at 558; *Texas Employers' Ins. Ass'n v. Engelke,* 790 S.W.2d 93, 95–96 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Texas Am. Bank v. Haven,* 728 S.W.2d 102, 104 (Tex.App.—Fort Worth 1987, writ dism'd); *Hardy v. Construction Sys., Inc.,* 556 S.W.2d 843, 844 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *Houston Drywall, Inc.,* 541 S.W.2d at 221; *Moody v. State,* 538 S.W.2d 158, 161 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.), cert. denied, 434 U.S. 1068, 98 S.Ct. 1248, 55 L.Ed.2d 770 (1978); *Goodson v.*

uitable, the party served with the writ, is neither an officer of the court nor a fiduciary.

■ Additionally, as a general rule, Texas courts will not allow a judgment debtor to use the doctrine of *in custodia legis* to protect funds from garnishment. The doctrine was not formulated to protect any party claiming entitlement to the funds. Rather, the doctrine is enforced by the courts to preserve the jurisdiction of the court administering the property in issue. Its purpose is to prevent conflicts of jurisdiction from one court to another and to insure orderly judicial procedure in the administration of funds. *Turner v. Gibson*, 151 S.W. at 794; *Hardy*, 556 S.W.2d at 844; *Watson*, 413 S.W.2d at 848. Daniels helped create the jurisdictional conflict between Bexar and Kerr Counties which *in custodia legis* seeks to remedy. We hold *in custodia legis* does not apply to these facts. Point of error number two is overruled.

In his third point of error, Daniels argues the writ did not attach to future funds, but only to those funds Equitable owed Daniels on or before the date the writ was served and until The Equitable's answer date. Specifically, Daniels contends only funds owing to Daniels by Equitable between October 9 and November 5, 1990 could have been reached by the first writ of garnishment, and only funds owed to Daniels by Equitable between January 11 and February 4, 1991, could have been reached by the second writ. Thus, he reasons, only the periodic annuity payment of $1,000 (issued on January 16) was covered by the second writ of garnishment. Even if Daniels' argument is legally sufficient, it is factually incorrect. When Equitable was served with the second writ of garnishment, it was in possession of $53,000 owed to Daniels.

■ He next contends the trial court committed reversible error by awarding Pecan Valley Ranch and Equitable a right to attach to Daniels' future annuity payments, citing *Rome Indus., Inc. v. Intsel Southwest*, 683 S.W.2d 777 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), and *First Nat'l Bank v. Banco Longoria, S.A.*, 356 S.W.2d 192 (Tex.Civ.App.—San Antonio 1962, writ ref'd n.r.e.), which deal with garnishment principles. While future annuity payments are not subject to garnishment, Pecan Valley also sought an application for turnover relief, which by its express terms, applies to future rights of property. Tex.Civ.Prac. & Rem.Code Ann. § 31.001 (Vernon 1986). We are persuaded the evidence supports the trial court's ruling that $53,000 in past payments were trapped by the second writ of garnishment and future payments of the annuity funds may be attached pursuant to the turnover order. Point of error number three is overruled.

■ In point of error number four, Daniels argues he is entitled to the annuity funds because the trial court refused to have a hearing on his motion to dissolve the writ of garnishment within ten days following filing of the motion, as required by Rule 664a of the Texas Rules of Civil Procedure. At the time Daniels filed his motion, Equitable had deposited the annuity funds into the registry of the court, as required by the Order dated December 18, 1990. The court had acquired jurisdiction independent of the writs when Equitable placed the funds into the registry of the Kerr County court on February 4, 1991. At that point, the action was no longer strictly an action for garnishment, but an action for interpleader, and the rules governing garnishment no longer applied. Point of error number four is overruled.

■ In point of error number five, Daniels contends turnover relief can be brought only against the judgment debtor,

*Carr*, 428 S.W.2d 875, 879 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Watson*, 413 S.W.2d at 848; *Crouch v. Shields*, 385 S.W.2d 580, 584 (Tex.Civ.App.—Dallas, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 907, 86 S.Ct. 232, 15 L.Ed.2d 159 (1965); *Saenger v. Proske*,

232 S.W.2d 106, 109 (Tex.Civ.App.—Austin 1950, writ ref'd n.r.e.); *Houlle v. Martin*, 35 S.W.2d 785, 786 (Tex.Civ.App.—Texarkana 1931, no writ); *Challenge Co. v. Sartin*, 260 S.W. 313, 314 (Tex.Civ.App.—Dallas 1924, no writ).

Daniels, and not the garnishee, Equitable. Texas courts have rejected this argument. *Childre v. Great Southwest Life Ins. Co.,* 700 S.W.2d 284, 286–87 (Tex.App.—Dallas 1985, no writ). In *Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.,* 703 S.W.2d 345, 349 (Tex.App.—San Antonio 1985, no writ), this court held a turnover order can issue against one other than a judgment debtor. In that case, the turnover order directed that Norsul Oil & Mining, Ltd. and its president, Wayne Fowler, forward to the district court 220,000 shares of Norsul stock which had been sent to Norsul by Fred Forster Jr., a judgment debtor, before the turnover proceedings. *Id.* at 346–47. This court focused upon the issue of ownership—specifically, whether the shares of Norsul stock had actually been assigned and conveyed to Norsul or whether the judgment debtors, the Forsters and their company, were the owners of the stock. *Id.* at 347. We found the shares were still owned by Forster Drilling Co. and ruled although a third party, Norsul, held the shares, they were subject to the possession or control of the owners, the judgment debtors. The Court stated:

> [a]lthough a third party retains the property, if it is shown to be non-exempt, owned by a judgment debtor and subject to the debtor's possession or control, the trial court may issue and enforce its turnover order.

*Id.* at 349.

Daniels argues the funds were outside his "possession or control" since the funds Pecan Valley sought to attach by turnover order were either funds held in the registry of the court or future payments owed by Equitable to Daniels. *Norsul* does not stand for the proposition the funds must be "in" the possession or control of the debtor, but the funds be "subject to" his possession or control. Here, as in *Norsul,* although a third party, Equitable, held the funds, the annuity was subject to the possession or control of the judgment debtor, Daniels. We hold the trial court correctly ruled turnover relief may be directed against Equitable. Point of error number five is overruled.

By his sixth point of error, Daniels contends the court abused its discretion by allowing the turnover order to attach to funds *in custodia legis,* or in the custody of, the Kerr County court. As previously discussed, it cannot be said the annuity was in the custody of the court for *in custodia legis* purposes. Additionally, the court had jurisdiction to issue orders with regard to Daniels' future property rights in the fund pursuant to the turnover action under section 31.002 of the Texas Civil Practice and Remedies Code. Point of error six is overruled.

In conclusion regarding procedural points of error one through six, we acknowledge the complexity and quantity of motions in the Kerr County case, and the concurrent pendency of the Bexar County case filed by Daniels, presented a procedural minefield through which the trial judge navigated. While we may not have made the same rulings, we are satisfied the trial court did not commit any procedural errors which would require reversal.

By points of error fifteen through seventeen, Daniels contends the trial court erred in requiring Daniels to pay Equitable $40,000 in trial and appellate attorney's fees. The reasonableness of attorney's fees is a question of fact, and an award of fees must be supported by credible evidence. *Connecticut Gen. Life Ins. Co. v. Bertrand,* 65 S.W.2d 279, 281 (Tex. Comm'n App.1933, holding approved). The trial court's award is reviewed under an abuse of discretion standard. *Gonzalez v. Nielson,* 770 S.W.2d 99, 102 (Tex.App.—Corpus Christi 1989, writ denied).

The record is clear that Equitable's able counsel presented more than sufficient evidence to support the trial court's finding of the reasonableness of the amount of Equitable's attorney's fees. To that extent, points of error fifteen through seventeen are overruled. The question, however, is whether Daniels is obligated, under statutory and case law, to bear the costs of Equitable's representation. For the reasons stated below, we hold he is liable only for the limited amount necessary to file and present the basic interpleader action.

■ Points of error fifteen and sixteen argue that Equitable was not entitled to recover its attorney's fees in the interpleader and garnishment actions. An innocent, disinterested stakeholder who has reasonable doubts as to the party entitled to property in its possession, and who in good faith interpleads the funds, is entitled to the recovery of attorney's fees. *United States v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 580 (Tex.1964). Pursuant to Rule 43 of the Texas Rules of Civil Procedure, a petitioner in interpleader must prove:

(1) he is either subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property;

(2) he has not unreasonably delayed in filing the action for interpleader and

(3) he has unconditionally tendered the fund into the court.

*Sears Sav. & Profit Sharing Fund v. Stubbs*, 734 S.W.2d 76, 79 (Tex.App.—Austin 1987, no writ). Failure to meet any one of these elements defeats a petitioner's standing as an innocent, disinterested stakeholder and precludes recovery of attorney's fees in the interpleader action. *Id.*

To determine whether Equitable had reasonable grounds to anticipate rival claims to the annuity fund, Daniels contends Equitable's actions must be judged by the facts existing at the time the writ was served upon Equitable. In support of this proposition, Daniels cites *First Realty Bank v. Ehrle*, 521 S.W.2d 295, 297 (Tex. Civ.App.—Dallas 1975, no writ). In *Ehrle*, the plaintiff brought an action against the defendant bank to recover damages allegedly caused by improper interpleading of funds in a garnishment action. In considering whether the garnishee bank was justified in going further than merely filing an answer to the garnishment writ by impounding the funds, the court stated "the propriety of the bank's action must be judged by the facts existing at the time the writ was served upon the bank *and* prior to the time the [proper] court rendered judgment in favor of [the] appellees." *Id.* at 297. (emphasis added). Under *Ehrle*, Equitable's actions must be judged not only by the facts existing when the writ was served, but also prior to the time the Kerr County court rendered judgment in favor of appellee Pecan Valley.

■ The record reflects Equitable was subject to rival claims in the same fund, in satisfaction of the first element required of an interpleader requesting attorney's fees. It has demonstrated it was subject to two conflicting court orders: a writ of garnishment from the Kerr County court ordering it not to pay Daniels and a temporary restraining order issued by the Bexar County court ordering it to pay the fund to Daniels. The evidence also establishes Daniels and Pecan Valley each claimed rights to the annuity.

Equitable sought to demonstrate its entitlement to attorney's fees by proving it did not unreasonably delay filing the action for interpleader and placing the funds into the registry of the court. Equitable claims it did so as soon as it safely could without being exposed to penalties of contempt for disobeying the court order obtained by Daniels in Bexar County. The record reflects that Equitable was served with a writ of garnishment on October 9, 1990. Upon receipt of the writ at its New York office, Equitable immediately stopped payment on the $51,000 annuity check it had issued to Daniels (as his November 16, 1990 periodic payment) and filed its "Answer to Garnishee's Summons." After several motions had been filed and hearings held, conflicting court orders were issued on December 18, 1990 by the Bexar and Kerr County courts. Equitable argues it could not interplead the funds into the registry of the Kerr County court for fear of being sanctioned by the Bexar County court. Equitable did interplead the funds into the registry of the Kerr County court on February 4, 1991. This was after Equitable had been served with a second writ of garnishment, Daniels' motion to release the annuity funds was filed, the cause was set for trial on the merits in Kerrville, and Pecan Valley filed its application for turnover relief. Given the multiplicity of legal actions and the evidence before the trial court, we cannot say the trial judge com-

mitted any error in finding, as a matter of fact, the delay in filing the interpleader was not unreasonable.

Although the tender of funds technically was not unconditional, as required by Rule 43, the reason Equitable conditioned its tender on the dismissal of the Bexar County injunction was that Equitable did not want to subject itself to contempt charges. It is, of course, undisputed that Daniels was the party who obtained the injunction. Thus, Equitable found itself between the proverbial rock and a hard place in wanting to interplead the funds, but being subject to a court order that it pay the money to Daniels. We hold Daniels is liable for Equitable's interpleader attorney fees to the extent of a reasonable amount for filing and presenting the basic interpleader action. *Monarch Tile Sales v. Frost Nat'l Bank*, 496 S.W.2d 254, 254–55 (Tex.Civ. App.—San Antonio 1973, no writ) (unsuccessful claimant to interplead fund bears burden of paying stakeholder's attorney's fees).

■ Daniels next argues, by point of error sixteen, Equitable became a party litigant to this case, and is, therefore, not entitled to garnishment attorney's fees. A garnishee who, instead of merely stating the facts in his answer, assumes the burden of the contest shall not be awarded attorney's fees. *Moursund v. Priess*, 84 Tex. 554, 19 S.W. 775, 776 (1892); *Holt's Sporting Goods Co. v. American Nat'l Bank*, 400 S.W.2d 943, 946 (Tex.Civ.App.— Amarillo 1966, writ dism'd). The record reflects Equitable, rather than removing itself from the litigation, has taken an active interest in doing work for and supporting Pecan Valley's interest in this case. Equitable's attorney made multiple objections to the examination of Daniels during his deposition, cross-examined Daniels' witnesses during trial, bolstered Pecan Valley's witnesses and actively voiced Pecan Valley's arguments on appeal. Equitable used Pecan Valley's expert to distinguish between an annuity, an insurance policy, and a trust during trial. In fact, Equitable briefed not only points relating to its right to attorney's fees, but supported Pecan

Valley on the substantive and procedural points of error raised by Daniels. It argued for upholding Pecan Valley's attorney's fees on appeal. We find that, instead of merely restating the facts regarding the structured settlement annuity benefits it agreed to pay its annuitant, Daniels, Equitable became a litigant with Pecan Valley and significantly aided the prosecution of Pecan Valley's claim. Equitable is not entitled to its attorney's fees from Daniels' annuity pursuant to the garnishment action. Point of error sixteen is sustained.

■ By point of error seventeen, Daniels argues the trial court erred in granting Equitable attorney's fees for its defense of the Bexar County action because the Bexar County case was a separate and distinct suit brought by Tom Daniels against Equitable. The trial court found Equitable's defense of the Bexar County suit brought by Daniels was inextricably intertwined with its actions in this case to preserve the fund and place it in the registry of the court so the conflicting claims could be determined by a court with jurisdiction over all parties. The Bexar County case is still pending, awaiting the outcome of this appeal. There is no way for us to know which party will prevail and, therefore, we hold that any award of attorney's fees in the Bexar County action is premature. Point of error number seventeen is sustained.

■ Finally, by point of error eighteen, Daniels argues the trial court abused its discretion in granting attorney's fees to Pecan Valley in connection with the its application for turnover relief. We have found, by points of error five and six, that Pecan Valley properly brought its application for turnover relief pursuant to section 31.002 of the Texas Civil Practice and Remedies Code. A judgment creditor who obtains turnover relief is entitled to reasonable costs, including attorney's fees. *Id.* Pecan Valley was, therefore, properly awarded attorney's fees. Point of error eighteen is overruled.

Accordingly, the judgment of the trial court is affirmed as to Pecan Valley's right to satisfy its judgment against Daniels

from the annuity proceeds and as to its attorney's fees for turnover relief. The judgment of the trial court awarding attorney's fees to Equitable is reversed and the cause is remanded for the trial court's determination of Equitable's attorney's fees for filing and presenting the interpleader action. Costs of this appeal are taxed one-half against Daniels and one-half against Equitable.